**In re FLEMING.**

[Cite as *In re Fleming* (1991), 76 Ohio App.3d 30.]

Court of Appeals of Ohio,
Lucas County.

No. L–90–331.

Decided Aug. 30, 1991.

*Spiros P. Cocoves,* for appellant, Roosevelt Riley.

*Patricia J. Clark,* for appellee, Lucas County Children Services Board.

ABOOD, Judge.

This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, which permanently terminated the parental rights of Tyra Fleming and appellant, Roosevelt Riley, and granted permanent custody of Barbara Fleming to appellee, the Lucas County Children Services Board (LCCSB). Appellant has appealed, setting forth the following assignments of error:

"1. The trial court violated appellant's due process rights by the delay in issuing a decision on CSB's motion for permanent custody.

"2. The trial court did not have clear and convincing evidence on which to base its finding that Barbara Fleming was a child without adequate parental care and would continue to be without adequate parental care."

The facts which are relevant to the issues raised in this appeal are as follows. On September 11, 1987 appellee filed a complaint pursuant to R.C. 2151.03(B)(C), 2151.031(B) and 2151.04(C), which claimed that Barbara (born June 22, 1987) was dependent, neglected and abused and requested that it be granted temporary custody of Barbara for placement and planning. In its complaint appellee alleged the following: it had been involved with the minor mother, Tyra Fleming, prior to the birth of her twins in order to assist her in locating appropriate housing; that on June 22, 1987 the twins were born two months premature and anemic and remained in the hospital for two weeks; that upon their release the twins were placed with their paternal grandmother, Mrs. Eaton, and that Mrs. Eaton, Tyra and appellant each completed apnea monitor training, which was necessary for both twins; that on August 12, 1987, when Mrs. Eaton took the twins to the hospital for a check-up, Barbara was found to be in good health, but Beverly was admitted the next day for failure to thrive; that on August 29, 1987 Beverly was released to Mrs. Eaton; that on September 11, 1987 appellee was contacted by Toledo Hospital and informed that Beverly had been brought to the hospital the previous evening and was dead upon arrival; and that the circumstances surrounding her death were under investigation and that neither Mrs. Eaton nor the parents had informed appellee of her death. Appellee alleged that neither Tyra nor appellant was capable of independently caring for Barbara and requested temporary custody for placement and planning. On the same day the complaint was filed an emergency detention hearing was held, and the court found Barbara to be in imminent danger of physical and emotional harm if left in the

custody of her mother. On September 22, 1987, a judgment entry was filed which granted appellee temporary custody pending adjudication and appointed guardians *ad litem* for the mother and child.

On January 8, 1988 adjudicatory and dispositional hearings were held, at which time the parties agreed to the facts as set forth in the complaint except that the parents claimed that they had notified appellee of Beverly's death. At the conclusion of the hearings a judgment entry was filed which found Barbara to be a dependent child and awarded temporary custody of Barbara to appellee for placement and planning. On February 17, 1988 comprehensive reunification plans ("CRP") were filed for both Tyra and appellant. Pursuant to this plan, appellant was required to have frequent and regular consultation with his caseworker and frequent and regular visitation with Barbara, to cooperate in all respects with the caseworkers and other LCCSB staff, to sign release forms for confidential information, to attend a sudden infant death syndrome support group, to attend counseling to work through the grieving process of Beverly's death, to attend medical appointments, to begin parenting classes at the Cummings–Zucker Center for fathers and to notify the caseworker of any significant changes at home or in his personal life which would affect Barbara's reunification with her family.

On February 27, 1989 appellee filed a motion to terminate temporary custody without protective supervision, stating that Barbara was with Tyra in her home. In support of its motion appellee indicated that Tyra had had Barbara with her since November 23, 1988, had more or less minimally complied with her comprehensive reunification plan, had demonstrated an ability to parent Barbara, and had provided appropriate housing for herself and the child. As to appellant, however, appellee indicated that he had not participated in any of the activities listed on his CRP, had refused to cooperate with the caseworker or the case plan and had attended only a few visits or parenting classes, which was less than minimal compliance. On March 3, 1989 the guardian *ad litem* for Barbara filed a motion in opposition to appellee's motion to terminate, alleging that terminating temporary custody would be contrary to Barbara's best interest. In support of the motion the guardian *ad litem* stated that Tyra had unilaterally terminated her parenting classes through the teen family enrichment program in October 1988 and that she had indicated that she felt unable to establish a close bond with Barbara and believed that it was in Barbara's best interest to be returned to the foster parents who had cared for her from age three to eighteen months. On April 7, 1989 appellee filed a motion to remove Barbara from the home, stating that Tyra had informed it that she no longer wanted Barbara and had failed to follow her case plan since Barbara had been returned to her in November 1988. On April 17, 1989 a judgment entry was filed indicating that Tyra was to obtain psychological evaluation and participate in parenting classes and

that temporary custody of Barbara was to be continued with appellee pending a hearing on appellee's motion to terminate.

On June 6, 1989 appellee filed a motion to change disposition, requesting permanent custody of Barbara. In support of its motion appellee stated that, although Tyra had complied with her CRP and Barbara had been returned to her, she had declined further services and her relationship with Barbara had deteriorated, resulting in Tyra finally indicating that she believed it was in Barbara's best interest to be returned to her foster home. Appellee also indicated that appellant had failed to comply with his CRP, had not cooperated with appellee in order to gain custody of Barbara and was currently incarcerated. Appellee alleged that Barbara was without adequate parental care and that it was in her best interest to permanently terminate the parental rights of Tyra and appellant. On September 18, 1989, October 25, 1989 and November 1, 1989 hearings were held on appellee's motion for permanent custody.[1] While appellant was present on each day, Tyra did not appear until the second day of the hearings. Testifying at the hearings were Lori Kraus and Rebecca Battles, both caseworkers with CSB, Shelly Falkenberger, the coordinator for the teen family enrichment program at St. Vincent's Medical Center, Fanny Effler, Barbara's guardian *ad litem,* Clodde Eaton, appellant's mother, appellant, and Tyra Fleming.

Battles testified that she had received the case at its inception in June 1987. As to appellant's involvement, she testified that, although he did express a genuine interest and desire for custody, he had exhibited only sporadic and minimal compliance with his CRP. She indicated that he attended only some of the visits and parenting classes, stating to her that he felt that he had had sufficient experience caring for his nieces and nephews and therefore did not need to attend the services required by his CRP. Battles testified that appellant was encouraged to return to high school and to get a job, but had made no progress, and was not stabilized enough to obtain custody of Barbara.

Kraus testified that she had received the case from Rebecca Battles in January 1989 and had not come into contact with appellant until July 1989, at which time she told him that he must follow his CRP for there to be a reunification with Barbara. Kraus also testified that appellant had expressed no interest in parenting classes or counseling and, while he wanted Barbara, had attended only fourteen out of thirty-three visits from January 1988 to the date of the hearing, although he had been incarcerated for a good part of that time. Finally, Kraus indicated that Barbara had never been at home with appellant and that his visits with her had only been at LCCSB.

---

1. The record indicates that further hearings were held on December 11, 1989; however we have no transcript before us of any proceedings held on that date.

Effler testified that her only contact with appellant was that he had called her from prison to suggest that Barbara go to relatives in Minnesota. Effler stated that she believed that the foster home was best for Barbara, indicating that appellant lived with his mother, with whom Barbara had no bond. Finally, Effler testified that she felt it was in Barbara's best interest for appellee to have permanent custody.

Appellant testified that he had often helped Tyra with Barbara and Beverly and now with their new baby and that, although he didn't think that he needed them or that he was required to attend them, he had attended parenting classes, going when he felt like it and had transportation. Appellant also testified that he was currently living with his mother and had no job prospects but did odd jobs for money. Finally, appellant testified that he had never legally established his paternity of Barbara and had never paid support for her, but that he did give Tyra money occasionally for Pampers, milk and food.

Falkenberger testified that appellant and Tyra were referred to her parenting program in August 1987. She stated that, although appellant attended twelve out of fifteen classes, when he was there he did not feed, play with, or care for Barbara, but expected Tyra to do everything, and showed little progress.

Eaton testified that appellant resided with her along with five of her other children and some of her grandchildren and that he was a good father and had good interaction with Barbara and Tyra's new baby.

Tyra testified that she did not want Mrs. Eaton to have Barbara and that at first she did not want appellant to have Barbara but now felt that he treated the babies well and had helped with them. Tyra also testified that after Barbara came back she had become quiet and distant and often sat alone unless there were other children around. She stated that she felt Barbara had bonded to her foster parents and wasn't happy with her and that she had decided to return Barbara to her foster parents after she had been told that she could attend counseling to help her with bonding. Tyra testified further that she had now changed her mind and wanted Barbara back, but also wanted what was in Barbara's best interest. As to her relationship with appellant, Tyra testified that they are not married and do not live together but that he sometimes stays with her and comes and goes as he pleases. She also stated that appellant sometimes gives her a little money.

On July 17, 1990 the referee issued his report, which contained extensive findings of fact and recommended that permanent custody of Barbara Fleming be awarded to appellee for adoptive placement and planning and that the parents be divested of all parental rights, privileges and obligations. On July 31, 1990 appellant filed objections to the referee's report, and on August 22, 1990, a hearing was held before the trial court on the objections. Although at

the conclusion of the hearing the trial court told the parties that it would render its decision within seven days, it did not file its final judgment entry until October 16, 1990. In its final judgment entry the trial court found appellant's objections not well taken and affirmed and adopted the findings and recommendations of the referee. It is from that decision that appellant has filed his appeal.

In his first assignment of error appellant asserts that the trial court violated his right to due process by its delay in issuing its final decision on appellee's motion for permanent custody. Specifically, appellant states that there was a delay of approximately nine and one-half months between the conclusion of the dispositional hearings and the filing of the referee's findings and recommendations, and almost two months between the hearing on his objections to the referee's report and the entry of the trial court's final judgment on October 16, 1990.

In considering this assignment of error, this court must address the seven-day time requirement of both Juv.R. 34(C)[2] and R.C. 2151.35(B)(3),[3] due to the date of the filing of appellee's motion for permanent custody and the provisions of R.C. 2151.413[4] and 2151.414.[5] In so doing, this court must address

---

2. Juv.R. 34(C) provides:
 "(C) Judgment. After the conclusion of the hearing, the court shall enter an appropriate judgment within seven days. A copy of the judgment shall be given to any party requesting such copy. In all cases where a child is placed on probation, the child shall receive a written statement of the conditions of probation. If the judgment is conditional, the order shall state the conditions. If the child is not returned to his own home, the court shall determine which school district shall bear the cost of his education and may fix an amount of support to be paid by the responsible parent, or to be paid from public funds."

3. R.C. 2151.35(B)(3), effective January 1, 1989, provides in pertinent part:
 "(3) After the conclusion of the dispositional hearing, the court shall enter an appropriate judgment within seven days and shall schedule the date for the hearing to be held pursuant to section 2151.415 of the Revised Code. The court may make any order of disposition that is set forth in section 2151.353 of the Revised Code. A copy of the judgment shall be given to each party and to the child's guardian ad litem. If the judgment is conditional, the order shall state the conditions of the judgment."

4. R.C. 2151.413(A), effective January 1, 1989, provides:
 "(A) A public children services agency or private child placing agency that, pursuant to an order of disposition under division (A)(2) of section 2151.353 of the Revised Code or under any version of section 2151.353 of the Revised Code that existed prior to the effective date of this amendment, is granted temporary custody of a child who is not abandoned or orphaned or of an abandoned child whose parents have been located may file a motion in the court that made the disposition of the child requesting permanent custody of the child if a period of at least six months has elapsed since the order of temporary custody was issued or the initial filing of the case plan with the court if the child is an abandoned child whose parents have been located."

5. R.C. 2151.414, effective January 1, 1989, provides in pertinent part:
 "(A) Upon the filing of a motion pursuant to section 2151.413 of the Revised Code for permanent custody of a child by a public children services agency or private child placing

the issue of the application of that seven-day requirement in light of our previous decisions in *In re Hogan* (Nov. 16, 1990), Lucas App. No. 89–259, unreported, and *In re Rodgers* (Nov. 30, 1990), Lucas App. No. 90–115, unreported, which conflict in their determination as to whether that rule is mandatory or directory.

In *Hogan* the appellant raised as error several violations by the trial court of the procedural requirements set forth in R.C. Chapter 2151, as amended effective January 1, 1989, and the Juvenile Rules, including a violation of the seven-day requirement set forth in R.C. 2151.35(B)(3) and Juv.R. 34(C). In *Hogan*, the adjudicatory and dispositional hearings, which were held before a trial judge, concluded on July 14, 1989, and the trial judge issued his final judgment on August 11, 1989. In *Hogan*, this court found that the seven-day requirement set forth in both R.C. 2151.35(B)(3) and Juv.R. 34(C), as applicable therein, was mandatory. The *Hogan* court reversed the final judgment of the trial court on the basis of the trial court's failure to comply with that and other mandatory procedural requirements and remanded the case for new adjudicatory and dispositional hearings. Custody was ordered to remain in Lucas County Children Services Bureau pending those hearings.

In *Rodgers*, the appellant raised as error the failure of the trial court to observe the requirements of R.C. 2151.35(B)(3). There the dispositional hearing was held before a referee and concluded on November 13, 1989. The referee's report was filed on December 15, 1989, and on December 29, 1989 and January 3, 1990 objections to the report were filed. On February 7, 1990 the trial court held a hearing on the objections and on February 27, 1990 issued its final judgment entry. In *Rodgers*, this court determined that it was a "virtual impossibility" for a referee to review all of the evidence, prepare the findings and recommendations required by Juv.R. 40(D) and submit those to the trial judge for final decision, all within seven days. This court found in that case that, upon examination of the evidence and the record, the three-month delay in issuing final judgment was not prejudicial to appellant.

It is obvious from the foregoing that the court should reexamine its decisions in *Hogan* and *Rodgers* and review and reconsider the question of

---

agency that has temporary custody of the child, the court shall schedule a hearing and give notice of the filing of the motion and of the hearing, in accordance with section 2151.29 of the Revised Code, to all parties to the action and to the child's guardian ad litem. * * * *The court shall conduct a hearing in accordance with section 2151.35 of the Revised Code to determine if it is in the best interest of the child to permanently terminate parental rights and grant permanent custody to the agency that filed the motion.* The adjudication that the child is an abused, neglected, or dependent child and the grant of temporary custody to the agency that filed the motion shall not be readjudicated at the hearing and shall not be affected by a denial of the motion for permanent custody." (Emphasis added.)

whether the seven-day provision of Juv.R. 34(C) and R.C. 2151.35(B)(3) is mandatory or merely directory.

■ While the Juvenile Rules were enacted pursuant to Article IV of the Ohio Constitution to establish a uniform procedure for the courts of Ohio, they do not affect the jurisdiction of the juvenile courts as established by statute. *Linger v. Weiss* (1979), 57 Ohio St.2d 97, 11 O.O.3d 281, 386 N.E.2d 1354; Juv.R. 1(A).

The stated purpose of R.C. Chapter 2151 is, among other things, to provide for the care, protection, and mental and physical development of children and to provide judicial procedures in which the parties are assured of a fair hearing and of having their constitutional and other legal rights enforced. R.C. 2151.01(A) and (D).

Preliminarily we note that in both R.C. 2151.35(B)(3) and Juv.R. 34(C), the word "shall" is used in reference to the seven-day requirement. Appellant urges this court to find the seven-day requirement in Juv.R. 34(C) mandatory while appellee urges this court to find that requirement to be merely directory.

■ The word "shall" is usually interpreted to make the provision in which it is found mandatory, while the word "may" is generally construed as optional, permissive or discretionary. *Dorrian v. Scioto Conservancy Dist.* (1971), 27 Ohio St.2d 102, 107, 56 O.O.2d 58, 60, 271 N.E.2d 834, 837. Ordinarily, the two words are not used interchangeably or synonymously. *Id.* In order to determine and give effect to legislative intent it is sometimes necessary to give those words as used in a statute meanings different from those given them in ordinary usage. *Id.* In order for one to have the meaning of the other, however, such intent must appear from a general view of the particular statute involved. *Id.* at 108, 56 O.O.2d at 61, 271 N.E.2d at 838.

■ When reviewing the specific language of R.C. 2151.35(B)(3), we find that it is clear and definite in its meaning and that it is unnecessary to resort to any construction or interpretation to ascertain if the word "shall" was really intended by the legislature to mean "may." See, generally, *Sears v. Weimer* (1944), 143 Ohio St. 312, 28 O.O. 270, 55 N.E.2d 413; *Wingate v. Hordge* (1979), 60 Ohio St.2d 55, 14 O.O.3d 212, 396 N.E.2d 770. Upon consideration thereof, this court finds that the seven-day time requirement of R.C. 2151.35(B)(3) is clearly mandatory and must be applied as stated. For the same reason we find that the corresponding provision of Juv.R. 34(C) is also clear and definite and mandates compliance with its seven-day time limit.

Even assuming, for the sake of argument, that some ambiguity existed in the statutory provision as to the meaning to be accorded to the word "shall," thus requiring interpretation and determination of the legislative intent, it is clear from our review of R.C. Chapter 2151, as amended, that the intent of the legislature was to expedite all stages of these proceedings by imposing strict temporal requirements where none had existed previously, with the exception of Juv.R. 34(C). The imposition of such rigid time requirements surely is consistent with the important rights involved in these proceedings, specifically, parental rights, the emotional and physical well-being of children, and the need for expeditious resolution in order to stabilize the child's environment, especially crucial where permanent termination of parental rights is sought for adoptive purposes. Clearly, there is no view of the statute that supports the conclusion that the legislature intended the seven-day requirement of R.C. 2151.35(B)(3) to be merely directory despite the use of the word "shall."

Finally, R.C. 1.47(D) provides:

"In enacting a statute, it is presumed that:

" * * *

"(D) a result feasible of execution is intended."

■ It is the province of the legislature and those involved in enacting statutory provisions, and by the same token the Supreme Court of Ohio and those involved in adopting the Juvenile Rules of Procedure, to determine what is or is not feasible or possible. A court may not rewrite a particular provision on the basis that it is improving that provision, but, rather, it is limited to the application of the plain language thereof, or construction or interpretation only *where necessary*. See, generally, 85 Ohio Jurisprudence 3d (1988) 166, Statutes, Section 176 to 198; *Seeley v. Expert, Inc.* (1971), 26 Ohio St.2d 61, 55 O.O.2d 120, 269 N.E.2d 121.

In light of all of the foregoing, and upon reevaluation of our decisions in *Hogan* and *Rodgers*, we conclude that the seven-day requirement set forth in R.C. 2151.35(B)(3) and Juv.R. 34(C) is clearly mandatory and must be applied as such and not relaxed or eliminated by this court. By determining in *Rodgers* that application of a seven-day requirement was a "virtual impossibility," and by applying, instead, a subjective standard of determining what time frame was reasonable depending upon the particular facts of that case, we clearly were invading the province of the legislature and, in fact, rewriting the provision.

■ Upon consideration of the foregoing, we hereby overrule that part of our decision in *Rodgers* which is inconsistent with our decision herein. After

careful consideration, we also find that the seven-day rule can be applied consistently with Juv.R. 40(D), which mandates the preparation and filing of findings of fact and recommendations by the referee, provides an allowance of fourteen days from the filing of the referee's report for the filing of objections by the parties, and provides for a hearing on the objections. Specifically, our interpretation of Juv.R. 34(C) and R.C. 2151.35(B)(3) in this regard is as follows. When the dispositional hearing is conducted before a referee, the referee has seven days from the time the case becomes decisional in which to issue his findings of fact and recommendations. At the expiration of the fourteen-day period for filing objections, if no objections are filed, the case is decisional and the trial court has seven days to issue its final judgment. If objections are filed pursuant to Juv.R. 40 and a hearing is held, the judge has seven days from the conclusion of the hearing to enter its final judgment. Where, as in *Hogan*, the dispositional hearing is held before the trial judge, the trial judge has seven days from the conclusion of that hearing to issue its final judgment.

Having determined, therefore, that the seven-day requirement set forth in R.C. 2151.35(B)(3) and Juv.R. 34(C) is mandatory, we must now determine whether or not reversal of the trial court's decision in this case is required as a result of its failure to comply with that requirement.

 Upon consideration thereof, this court finds that (1) while the trial court did err in not complying with R.C. 2151.35(B)(3) and Juv.R. 34(C), that error did not result in a denial of appellant's right to due process of law; (2) the trial court's failure to meet the mandatory time requirement of R.C. 2151.35(B)(3) and Juv.R. 34(C) does not deprive it of jurisdiction to enter a final determination even though rendered outside of those time requirements, *Weiss, supra;* and (3) reversal of the trial court's final judgment is not the proper remedy. To the extent that our decision in *Hogan, supra,* is inconsistent with this ruling, in that we did reverse the trial court's decision and remand the case for new adjudicatory and dispositional hearings, that decision is also overruled.[6] This court finds further that the proper remedy in cases

---

6. We note, however, that in *Hogan* the trial court's final decision was reversed and remanded also based upon that court's failure to follow the mandatory procedures set forth in 2151.419 requiring that certain determinations be made at the adjudicatory hearing and that written findings of fact setting forth these determinations be filed. In determining in this case that reversal and remand of the trial court's final judgment for failure to comply with the seven-day requirement for entering final judgment is not the proper remedy, and reversing *Hogan* on those grounds, we are not reversing our decision in *Hogan* as to the other issues involved therein.

such as this, where a trial court fails to meet the seven-day requirement imposed by R.C. 2151.35(B)(3) and/or Juv.R. 34(C), would be for counsel for the parents or counsel for LCCSB to file, upon expiration of the seven-day time period, a petition for a writ of procedendo with this court requesting us to direct the trial court to comply immediately with those requirements and proceed to final judgment, and this court will as expeditiously as possible fully consider such request.

Accordingly, appellant's first assignment of error is found not well taken.

■ In his second assignment of error appellant asserts that the trial court did not have clear and convincing evidence upon which to base its finding that Barbara Fleming was without adequate parental care.

Although some of the language used by the trial court, and the parties, suggests that they may have been proceeding under the old statute, the evidence and the findings of fact herein are not inconsistent with the factors set forth in R.C. 2151.414, amended effective January 1, 1989, which is applicable herein and which provides in pertinent part:

"(B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

"(1) The child is not abandoned or orphaned and the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents;

" * * *

"(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

"(1) The reasonable probability of the child being adopted, whether an adoptive placement would positively benefit the child, and whether a grant of permanent custody would facilitate an adoption;

"(2) The interaction and interrelationship of the child with his parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;

"(3) The wishes of the child, as expressed directly by the child or through his guardian ad litem, with due regard for the maturity of the child;

"(4) The custodial history of the child;

"(5) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.

"(E) In determining at a hearing held pursuant to division (A) of this section or for the purpose of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either of his parents within a reasonable period of time or should not be placed with his parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents:

"(1) Following the placement of the child outside his home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions causing the child to be placed outside his home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

"(2) The severe and chronic mental illness, severe and chronic emotional illness, severe mental retardation, severe physical disability, or chemical dependency of the parent makes the parent unable to provide an adequate permanent home for the child at the present time and in the foreseeable future;

"(3) The parent committed any abuse as described in section 2151.031 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;

"(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

" * * *

"(8) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect."

Clear and convincing evidence is that proof which establishes in the mind of the trier of fact a "firm conviction in the facts sought to be proved." *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus.

Upon review of all of the evidence that was before the trial court and as summarized above and each of the factors set forth in R.C. 2151.414, as well as all other factors relevant to the determination of what was in Barbara's best interest, this court finds that the standard of proof required by R.C. 2151.414 has been met and that the trial court did not err in granting permanent custody of Barbara to appellee. Accordingly, appellant's second assignment of error is found not well taken.

On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Court costs assessed to appellant.

*Judgment affirmed.*

HANDWORK, P.J., and MELVIN L. RESNICK, J., concur.