OPINION
These are appeals by Steven and Sherry McKean ("Appellants") from a judgment of the Court of Common Pleas of Allen County, Juvenile Division, granting the motion of the Allen County Children Services Board ("Appellee") for permanent custody of Bradley and Mary McKean, Appellants' minor children, and terminating the parental rights of Steven and Sherry McKean.
On December 9, 1994, Allen County Children Services Board filed two complaints in the common pleas court after the agency found bite marks and bruises on the body of two year old Bradley McKean. The first complaint alleged Bradley McKean was a dependant, neglected, and abused child and the other complaint alleged Bradley's sister, Mary McKean, was a dependant and neglected child.[1] The children were subsequently taken from their parents' home and placed in shelter care provided by Appellee. On February 9, 1995, in a judgment entry by consent, Bradley was adjudicated dependant, neglected, and abused and Mary was adjudicated dependant and neglected. The entry also granted Appellee temporary custody of Bradley and Mary. Appellee's case plans for the children were likewise incorporated into the judgment. Appellee's goals for the family included reunification of the children with their parents, medical treatment for the children, psychological evaluations of both parents, family counseling, and alcohol counseling for Steven McKean.
On October 31, 1995, Appellee filed a motion for permanent custody of both children, citing the failure of the parents to remedy the conditions causing the children to be placed out of the home and the inability of the parents to provide adequate parental care given their limited mental capacities (both Sherry and Steven McKean are mildly mentally retarded). Hearings on the motion were held on February 6, May 22, and August 14 of 1996. The court issued a final judgment on June 9, 1997, granting permanent custody of the children to Appellee.
Both Appellants have filed separate appeals to this judgment. Steven McKean raises five errors for our review, three of which are identical to the errors assigned by Sherry McKean in her appeal. We will address the parties' three similar claims later in this opinion. First, we turn to the two assignments of error asserted solely by Steven McKean.
Assignment of Error No. I
 The trial court erred in finding that one or more of the eight factors enumerated in Ohio Revised Code Section 2151.414(e) (sic) existed by clear and convincing evidence.
 Assignment of Error No. II
 The trial court erred in finding that the children cannot be placed or should not be placed with their parents within a reasonable time by clear and convincing evidence.
Once a child has been adjudicated dependant, neglected or abused and temporary custody of the child has been granted to a children services agency, the agency may file a motion for permanent custody of the child pursuant to R.C. 2151.415(A)(4). Guidelines for the permanent custody hearing and the determinations to be made by the court are set out in R.C.2151.414. According to R.C. 2151.414(B), the court must determine by clear and convincing evidence whether a grant of permanent custody would be in the best interests of the child "and that any of the following apply:"
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents;
 (2) The child is abandoned and the parents can not be located;
 (3) The child is orphaned and there are no relatives of the child who are able to take permanent custody.
R.C. 2151.414(B)(1)-(3).
When determining whether a child should not or cannot be placed with either of his parents within a reasonable time, the trial court is required to find one or more of the facts listed in R.C. 2151.414(E)(1)-(8) present as to each parent by clear and convincing evidence. Relevant to this case are subsections (1) and (2) of R.C. 2151.414(E) which state:
 (1) Following the placement of the child outside his home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions causing the child to be placed outside his home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (2) The severe and chronic mental illness, severe and chronic emotional illness, severe mental retardation, severe physical disability, or chemical dependency of the parent makes the parent unable to provide an adequate permanent home for the child at the present time and in the foreseeable future[.]
Initially, we note that the parties in this case did not request the court issue findings of fact and conclusions of law pursuant to R.C. 2151.414(C). Therefore, this court must assume "the regularity of the trial court's methodology" when reviewing the record and discussing Appellant's assignments of error. Zacekv. Zacek (1983), 11 Ohio App.3d 91, 95.
Nevertheless, the trial court's judgment entry does comment on some reasons for its decision to grant permanent custody to Appellee. The entry provides:
 [T]he court finds, by clear and convincing evidence, * * * that the father functions at the high end of the Mild Mentally Retarded Range with a full scale IQ of 68 and has been diagnosed as alcohol dependent; that both children are developmentally delayed with special needs, * * * that neither parent is able to adequately function as a protective and responsible parents given the nature of their intellectual limitations, limited adaptive abilities and the special needs of their children; that because of their intellectual limitation and limited adaptive abilities, neither parent is capable of acquiring the necessary skills required to adequately function as protective, responsive and responsible parents; that both parents are incapable of providing an adequate permanent home for the children; that placement of the children in the custody of either parent would subject the children to risk of physical harm; that * * * despite efforts by the agency * * * both parents have failed continuously and substantially to remedy the conditions causing the children to be placed outside their home * * * .
Our review of the record in this case reveals evidence which supports the trial court's conclusions. The evidence demonstrates that Dr. Hustak, a clinical psychologist, performed a psychological evaluation of Steven McKean in an effort to assist in the determination of whether he would be capable of effectively parenting two developmentally delayed children. The doctor testified that Steven McKean had a Full Scale IQ of 68 which placed him in the range of mildly mentally retarded individuals. Dr. Hustak noted that while Steven had better verbal skills and higher age equivalence, when compared to his wife, Sherry, his adaptive skills on trustworthiness and conformity and his interpersonal behaviors were found to be below average when compared to other mentally retarded individuals. While Steven has achieved a certain amount of "independent functioning" (described as basic functioning skills like using a fork or pencil, having table manners, being toilet trained, and practicing good hygiene), Dr. Hustak did not find him capable of being responsive to the needs of his children given their special problems. In his report which was admitted at the hearing on permanent custody, the doctor wrote:
 The conclusions in this case are straightforward and unambiguous: The McKeans will not be able to adequately function as protective and responsible parents given the nature of their intellectual limitations, adaptive abilities, and the special needs of their children. Mental retardation is not something that can be improved with classes when it comes to parenting in respect to raising their level of understanding, insight, or rationalization. * * * In the case of Steve McKean, his adaptive abilities are slightly better [than Sherry's], but even he is unable to go beyond the verbal promise of paying attention to the children's wants to the behavioral initiation and sustaining of that safe environment that the children will need in order to be protected. In other words, Steven may understand some of the basics of knowing what to say when the children need to be protected, but he will fail in the maintenance of those behaviors when the children need to be protected. Most likely, therefore, the children would be considered at risk to be parented by Steve and Sherry McKean, now and in the future.
 As an example of the latter, a report had occurred in the records of Children's Services wherein the home that Sherry and Steve were living in had exhibited poor hygiene, with dog feces throughout the house * * * . Steven may, for example, know that this is wrong but for reasons that he can't explain would not likely clean it up himself, take action and verbally berate his wife for doing so. Hence he would allow it to be until something happened with the children that would cause them to become diseased or ill from negligence on his part.
In addition, Steven McKean was also diagnosed as alcohol dependant by Greg Jacobs, a Dependency Counselor at Tri-Star Community Counseling. Jacobs counseled Steven for his alcohol dependency from November 1995 through April of 1996.[2] At the time of the hearing on permanent custody in May of 1996, Steven McKean had abstained from drinking alcohol for fifteen months. However, Jacobs testified that successful recovery from alcohol dependency is more than mere abstinence from alcohol. In addition to abstaining from alcohol, Jacobs also stated that alcoholics needed to comprehend their alcoholic behavior as a loss of control, be able to connect it to predictable actions, and be willing to commit themselves to lifestyle and personality changes. Given Steven's inability to understand these concepts to recovery, Jacobs stated Steve McKean's chances for a successful recovery from alcohol dependance were "pretty low."
The foregoing testimony of both Dr. Hustak and Mr. Jacobs, demonstrate that Steven McKean's intellectual limitations make him unable to adequately parent his two developmentally delayed children. These limitations not only frustrate his ability to be a responsive, responsible, and protective parent, but also jeopardize his chances for a lifelong recovery from alcohol dependency. Consequently, we find that the court had evidence before it on which to base its decision to terminate Steve McKean's parental rights under R.C. 2151.414(E)(1) or (2) by clear and convincing evidence. We overrule Steven McKean's first and second assignments of error.
Assignment of Error No. III [3]
 The trial court violated the Appellant's rights to due process of law pursuant to the Fourteenth Amendment to the United States Constitution and pursuant to Article I, Section 16, of the Ohio Constitution by finding Appellant failed to comply with undisclosed goals and objectives which were never put into any court approved case plan for the reunification of the minor children with their parents and in basing its ultimate decision granting permanent custody to the Allen County Children Services Board upon said findings.
Appellants claim that the juvenile court in this case granted Appellee permanent custody based on its finding that Appellants did not comply with certain case plan goals. Appellants claim that the unattained goals relied on by the trial court were not included in the case plans set out for them to follow. As a result, Appellants believe that their due process rights have been violated.
In their briefs, Appellants argue at length about how they have substantially complied with all the stated case plan goals; however, they fail to cite one purportedly "undisclosed goal" which the trial court used as a foundation for its decision. While the court made reference to Appellants' failure to remedy the conditions which resulted in the children being taken from the home, despite the case planning efforts of Appellee, there was no mention whether specific goals were or were not met in this case nor do we find that the attainment of these goals would necessarily be relevant. "The issue is not whether the parent has substantially complied with the case plan, but whether the parent has substantially remedied the conditions that caused the child's removal." In re McKenzie (Oct. 18, 1995), Wayne App. No. 95CA0015, unreported. Nevertheless, we are unable to identify any portion of the trial court's judgment entry wherein the court considered Appellants' "failure" to attain "undisclosed" goals when making its decision. Thus, Appellants have failed to demonstrate any error in the record to support their claim on appeal, as required by App.R. 16(A)(7). We overrule this assignment of error as to each Appellant.
Assignment of Error No. IV[4]
 The trial court violated the Appellant's rights to due process of law pursuant to the Fourteenth Amendment to the United States Constitution and pursuant to Article I, Section 16, of the Ohio Constitution by failing to enter a disposition order within the statutory time limits of O.R.C. Section 2151.35(B)(3) and/or O.R.C. Section 2151.414(A)(2).
As a threshold matter, we note the R.C. 2151.414(A)(2) appears in the amended version of R.C. 2151.414, effective September, 1996. Since this case was instituted before the September, 1996 amendment, the new statutory provisions are not applicable to this case. Prior to September of 1996, the only statutory provision imposing a time limit in which a court must render its decision on a disposition of a child is R.C.2151.35(B)(3). Consequently, we will consider Appellants assignments of error under this section only.
R.C. 2151.35(B)(3) states that "[a]fter the conclusion of the dispositional hearing, the court shall enter an appropriate judgment within seven days * * * ." In this case, the last hearing on the motion for permanent custody was held on August 14, 1996. The trial court did not render its decision until almost ten months later, on June 9, 1997. Appellants claim that this delay caused a per se violation of their due process rights.
Generally, it has been determined that the language used in R.C. 2151.35(B)(3) which includes the term "shall," is mandatory.In re Fleming (1991), 76 Ohio App.3d 30, 38; In re Holtgreven
(June 23, 1995), Hancock App. No. 5-95-7, unreported. However, a failure by the court to enter judgment within the seven day time limit does not affect the court's jurisdiction to render its decision nor does it require a reversal of the court's decision.Fleming, 76 Ohio App.3d at 40, citing Linger v. Weiss
(1979), 57 Ohio St.2d 97. As this court has stated in In re Davis
(Nov. 26, 1997), Paulding App. No. 11-97-6, unreported, when a court fails to issue a timely judgment in accordance with R.C.2151.35(B)(3), "the proper action to take would be to file a petition for a writ of procedendo with the appeals court requesting the court direct the trial court to comply immediately with the statutory requirements and proceed to final judgment." See Fleming, supra. We also note that like the case inIn re Davis, Appellants herein have not otherwise demonstrated or alleged any injury or prejudice by reason of the court's delay. Consequently, we overrule this assignment of error as to each Appellant.
Assignment of Error No. V[5]
 The trial court erred in rendering its judgment on the motion for permanent custody, in that the trial court was without jurisdiction to render any final disposition order as to custody as of December 8, 1996, and said jurisdiction had not been reinvoked by the filing of a new complaint thereafter.
Pursuant to R.C. 2151.353(A)(2), once a child is adjudicated abused, neglected or dependant, the court may commit the child to the temporary custody of a public service agency. This temporary order terminates "one year after the earlier of the date on which the complaint in the case was filed or the child was first placed into shelter care * * * ." R.C. 2151.353(F). This is commonly referred to as the sunset date, when no motion is filed under R.C.2151.415(A). However, under R.C. 2151.415(A), a children's service agency can file a motion requesting the court issue various dispositions, one of which includes granting the agency a six month extension of the temporary custody order if the agency complies with the requirements of R.C. 2151.415(D)(1) and/or (2) when filing the motion. R.C. 2151.415(A)(6). The court may only grant two six month extensions of temporary custody. R.C.2151.415(D)(4). Thus, in its attempt to resolve the problem of "foster care drift," the legislature has forced children's services agencies to find a permanent placement for children within two years. In re Omosun Children (1995), 106 Ohio App.3d 813,820.
In the present case, Appellants argue that the two year time-clock began ticking on December 9, 1994, when Bradley and Mary McKean were placed in shelter care. Provided that motions for extensions were timely filed, this would give the Appellee until December 8, 1996 to resolve the cases before the agency's custody terminated. In this case, the last hearing on Appellee's motion for permanent custody was held on August 14, 1996 and the juvenile court did not render its judgment until June of 1997. Appellants argue that because the sunset date on the temporary custody order granted to Appellee had passed on December 8, 1996, that the trial court allowed its jurisdiction to lapse by failing to issue a judgment entry of disposition prior to that date.
We disagree with Appellants' argument. The Supreme Court of Ohio has held in In re Young Children (1996), 76 Ohio St.3d 632, syllabus, that "[t]he passing of the statutory time period ('sunset date') pursuant to R.C. 2151.353(F) does not divest juvenile courts of jurisdiction to enter dispositional orders." See, also, In re Moses (Feb. 25, 1998), Allen App. Nos. 1-97-50 and 51, unreported. The Supreme Court reached this decision by relying on R.C. 2151.353(E)(1) which states that the trial court retains jurisdiction over any child found to be dependant until the child attains the age of eighteen or is adopted. In re YoungChildren, 76 Ohio St.3d at 637. We are also mindful that the statutes at issue are to be interpreted liberally so as to effectuate the legislative purpose of providing for the care, protection, and mental and physical development of children. R.C.2151.01(A). Consequently, we find that the juvenile court in this case was not divested of jurisdiction at the time it issued its dispositional order granting permanent custody of Bradley and Mary McKean to Appellee. We overrule this assignment of error as to each Appellant.
Having found no error prejudicial to the Appellants herein, in the particulars assigned and argued, we affirm the judgments of the trial court.
Judgments affirmed.
 HADLEY and BRYANT, JJ., concur.
[1] While Bradley and Mary McKean's cases have proceeded as separate, distinct actions, the hearings regarding the children were consolidated at the trial level given the similarity of issues and parties involved. Likewise, for purposes of this appeal, the cases have also been consolidated.
[2] Steven McKean had been involved in drug alcohol counseling at Tri-Star since March of 1994. Mr. Jacobs involvement began when Steven McKean's case was reopened in November of 1995.
[3] This assignment of error is also Sherry McKean's "Assignment of Error No. I."
[4] This assignment of error is also Sherry McKean's "Assignment of Error No. II."
[5] This assignment of error is also Sherry McKean's "Assignment of Error No. III."