OPINION
{¶ 1} Appellant was found delinquent for having committed possession of cocaine. Appellant now seeks to appeal the delinquency finding and disposition.
 STATEMENT OF FACTS AND CASE {¶ 2} On September 14, 2006 appellant was charged with one count of delinquency by reason of drug possession (cocaine) in violation of R.C.2925.11(A), a second degree felony, and one count of delinquency by reason of underage consumption in violation of R.C. 4301.69(E)(1).The trial court appointed a guardian ad litem and an attorney to assist the juvenile in his defense. Appellant's mother also appeared with the juvenile during the proceedings.
 {¶ 3} On September 25, 2006, the juvenile appeared before the trial court and pleaded not true to the delinquency charges. An adjudication was scheduled before a magistrate on November 22, 2006. The juvenile was ordered to be held in detention pending the adjudication.
 {¶ 4} On November 22, 2006, the juvenile appeared for the adjudication hearing. Several witnesses appeared on behalf of the State including Newark Police Department Officers, Doug Wells, Bobby Hartless, and Timothy Fleming. Prior to hearing testimony, the parties executed and filed a written stipulation to appellant's age (16 years), residency (Licking County, Ohio) and a lab report prepared by criminalist Tim Elliget which established that a baggie collected by law enforcement contained 13.2 grams of crack cocaine, a schedule II substance.
 {¶ 5} The testimony of the officers established that on September 14, 2006, at approximately 12:30 a.m. they responded to a call at 76 South Second Street, the *Page 3 
location of the Elbow Lounge Bar. The officers were dispatched to the location on a "remove subject call".
 {¶ 6} Officer Fleming arrived first on the scene. Upon arrival, Officer Fleming was met by an unidentified person from the bar who pointed at a small white car parked in the alley behind the bar approximately two feet from the sidewalk. The person asked Officer Fleming to remove the car and its occupants from the premises. Upon approaching the vehicle to speak with the occupants, Officer Fleming recognized the people in the car as being Willie Haile, Dariot Deresse and two females from the Bonners family. The officer testified that he had dealt with these four individuals several times in unrelated crack cocaine investigations.
 {¶ 7} Officer Wells testified that upon responding to the scene, he observed a male standing alone near the rear end of the white vehicle. He was able to identify the male as being Fritz Davis. He testified that he was familiar with appellant due to appellant's prior involvement with law enforcement.
 {¶ 8} Officer Hartless testified that as he approached the scene, he observed appellant reach up with a closed right hand. He then observed appellant make a throwing motion across his body, to the left, toward the street. He stated that appellant appeared to throw something toward the middle of the white vehicle. The officer further testified that he was not able to see if anything was being thrown because his view became obstructed. He testified that he then observed appellant leave the rear of the white vehicle and walk toward the back of the parking lot.
 {¶ 9} Officer Wells testified that he approached appellant to confirm his identification. Officer Wells stated that during his conversation with appellant he noticed *Page 4 
an odor of alcohol on appellant's breath. Appellant denied drinking any alcohol. Appellant further denied throwing anything at the scene.
 {¶ 10} Meanwhile, upon concluding his conversation with the people in the vehicle, Officer Fleming testified that he instructed them to leave the bar area. After the vehicle departed, Officer Wells stated that he observed a small bag, of what appeared to be crack cocaine, located where the rear axel of the vehicle had been parked. Officer Wells further testified that during his conversation with the occupants, he did not observe any of the passengers throw anything from the vehicle.[1]
 {¶ 11} Appellant was arrested at the scene, and charged with a curfew violation. Subsequent to his arrest the officers searched appellant and found one thousand and eight hundred dollars ($1,800.00) of United States Currency in two bundles in his left front pocket. Appellant claimed that he had obtained the money from his mother, other relatives and from his salary at McDonalds. He further stated that he had the money because he was shopping for clothes that evening. The baggie of white rocks was sent for further testing. Criminalist, Tim Elligit determined that the baggie contained 13.2 grams of crack cocaine.
 {¶ 12} After the conclusion of the State's evidence, counsel for appellant moved for a Rule 29(A) acquittal of the charges. The magistrate granted a dismissal of the underage consumption charge but denied appellant an acquittal as to the cocaine possession charge.
 {¶ 13} After hearing all the evidence, the magistrate found appellant delinquent of drug possession (cocaine) and proceeded to disposition. Appellant's counsel moved for *Page 5 
a continuance of the disposition but later withdrew the motion. The magistrate then recommended that appellant be committed to the Department of Youth Services for one (1) year up to the age of twenty-one (21) years on the possession charge. Additionally, the magistrate recommended the waiver of the imposition of any fines, payment of costs of the action, and the suspension of appellant's driver's license for a year. On November 22, 2006, the trial court approved and adopted the magistrate's decision.
 {¶ 14} On December 6, 2006, appellant filed an objection to the magistrate's decision arguing that the decision was against the manifest weight of the evidence. On December 22, 2006, appellant filed a notice of appeal from the November 22, 2006, court approval and adoption of the magistrate's recommended adjudication and disposition. On December 26, 2006, the trial court overruled appellant's objection.
 {¶ 15} It is from the trial court's November 22, 2006, approval and adoption of the magistrate's decision that appellant now seeks to appeal setting forth the following assignments of error.
 {¶ 16} "I. THE TRIAL COURT VIOLATED FRITZ DAVIS' RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION WHEN IT ADJUDICATED HIM DELINQUENT OF POSSESSION OF DRUGS, WHEN THAT FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 17} "II. THE TRIAL COURT VIOLATED FRITZ DAVIS' RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I SECTION 16 OF THE OHIO CONSTITUTION, *Page 6 
AND JUV.R. 29(E)(4) WHEN IT ADJUDICATED HIM DELINQUENT OF POSSESSION OF DRUGS ABSENT PROOF OF EVERY ELEMENT OF THE CHARGE AGAINST HIM BY SUFFICIENT, COMPETENT, AND CREDIBLE EVIDENCE.
 {¶ 18} "III. THE TRIAL COURT ERRED WHEN IT FAILED TO HOLD A HEARING TO DETERMINE WHETHER FRITZ DAVIS, A JUVENILE, WAS ABLE TO PAY THE SANCTION IMPOSED BY THE JUVENILE COURT AND WHEN IT FAILED TO CONSIDER COMMUNITY SERVICE IN LIEU OF THE FINANCIAL SANCTIONS IN VIOLATION OF R.C. 2152.20.
 {¶ 19} "IV. FRITZ DAVIS WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION."
 I, II {¶ 20} Appellant, in his first and second assignments of error, argues that his conviction for possession of cocaine was against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 21} A trial court may enter a finding of delinquency when the evidence demonstrates, beyond a reasonable doubt, that the child committed an act that would constitute a crime if committed by an adult. R.C. 2151.35(A); Juv.R. 29(E)(4). Thus, when reviewing the sufficiency of the evidence in a juvenile context, we apply the same standard of review applicable to criminal convictions. See In re Watson (1989),47 Ohio St.3d 86, 91, 548 N.E.2d 210. Our function when reviewing the sufficiency of the evidence is to examine the evidence admitted at trial and determine whether such *Page 7 
evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 22} The legal concepts of sufficiency and weight of the evidence are different. State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541, paragraph two of the syllabus. Thus, even if we conclude that a conviction is supported by sufficient evidence, we must still address the weight of the evidence, for it is possible that the evidence may be legally sufficient to go to the jury, yet be so logically unpersuasive that it cannot support a conviction. See State v.Robinson (1955), 162 Ohio St. 486, 487, 124 N.E.2d 148.
 {¶ 23} Our function when reviewing the weight of the evidence is to determine whether the greater amount of the credible evidence supports the verdict. Thompkins, 78 Ohio St.3d at 387, 678 N.E.2d 541. In order to undertake this review, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. Id., citing State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. If we find that the fact finder clearly lost its way, we must reverse the conviction and order a new trial. Id. On the other hand, we will not reverse a conviction so long as the state presented substantial evidence for a reasonable trier of fact to conclude that all of the essential elements of the offense were established *Page 8 
beyond a reasonable doubt. State v. Getsy, 84 Ohio St.3d 180, 193-194,1998-Ohio-533, 702 N.E.2d 866. In conducting our review, we are guided by the presumption that the trier of fact "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of proffered testimony." Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273.
 {¶ 24} In this case, appellant was found delinquent by reason of having committed possession of drugs (cocaine, a schedule II substance) in violation of R.C.2925.11(A) a second degree felony. To find appellant guilty of cocaine possession as alleged in the complaint, the trier of fact would have to find that appellant did knowingly, obtain, possess, or use a controlled substance, to wit: crack cocaine a schedule II controlled substance pursuant to R.C. 3719.41.
 {¶ 25} The testimony at trial established that on September 14, 2006, appellant, age sixteen years, was standing outside a bar at 12:30 a.m. in violation of the curfew. The evidence also established that appellant was standing near a white vehicle whose occupants are familiar to law enforcement from prior crack cocaine investigations. As officer Hartless approached the scene he observed appellant make a throwing motion toward the sidewalk in the middle of the parked white vehicle. After the vehicle drove away from the premises, officer Fleming recovered a baggie containing 13.2 grams of crack cocaine. The baggie was recovered from an area where the vehicle had been parked. Appellant's throwing motion was conceivably in the trajectory of the rear axel of the parked white vehicle. Furthermore, the officers testified that appellant was the only person outside the vehicle. Officer Fleming also stated that he did not observe any of *Page 9 
the passengers throw anything from the vehicle. Appellant initially denied throwing anything, but testified during adjudication, that he was actually throwing a cup of grey goose and pineapple juice that he had secreted out the back door of the bar.
 {¶ 26} During a search of appellant's person, the officers recovered two bundles of money from his left front pocket. The amount of money recovered was one thousand and eight hundred ($1,800) dollars.
 {¶ 27} In reaching the conclusion, finding appellant delinquent, it appears that the magistrate spent considerable time reviewing the evidence and weighing the credibility of the testimony. In relevant part the magistrate stated as follows:
 {¶ 28} "[Circumstantial evidence does in fact carry the same weight as direct evidence. * * * I * * * frankly compared theories of the case * * * [T]o believe his (appellant's) story, I have to first believe that in an effort to avoid attention and detection by the police officers, he took a cup * * * threw it, held it over his head and was almost in a throwing [sic] it motion before throwing it down rather than just dropping it next to him, maybe kicking it over to empty the contents. That doesn't make much sense to me.* * *It comes down to this, something your attorney actually said as he was referring to Willie Haile possibly being the source of this cocaine. He said that with this much cocaine he would want to create as much distance as possible between himself and this cocaine when he saw the police, and if it was in your possession, you would want to do the same, which would explain in my opinion, a throw from an overhand position down and way from yourself. You had no control where it went after that. You wandered away from it. That makes sense to me." (T. at 129-131). *Page 10 
 {¶ 29} In viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of drug possession (cocaine). We further find that the trier of fact did not lose its way and create such a manifest miscarriage of justice that the judgment must be reversed.
 {¶ 30} Accordingly, Appellant's first and second assignments of error are hereby overruled.
 III {¶ 31} Appellant argues in his third assignment of error that the trial court erred in ordering him to pay court costs. Specifically, he argues that the trial court should have conducted a hearing to determine if he was able to pay the financial sanction.
 {¶ 32} Pursuant to R.C. 2152.20, if a child is adjudicated delinquent, the court may order the child to pay the costs of the action. See R.C.2152.20(A)(2). The statute further states that prior to the imposition of costs, the "trial court may hold a hearing if necessary to determine whether a child is able to pay a sanction under this section. R.C.2152.20(C). Furthermore, if a child who is adjudicated a delinquent child is indigent, the court shall consider imposing a term of community service under division (A) of section 2152.19 of the Revised Code in lieu of imposing a financial sanction. R.C. 2152.20(D).
 {¶ 33} Appellant argues that the trial court is mandated to hold a hearing to determine whether a delinquent child is able to pay a financial sanction such as court costs. However, R.C. 2152.20(C) states that "[t]he court may hold a hearing if necessary * * *." (Emphasis added.) In statutory construction, the word "may" is *Page 11 
construed as optional, permissive, or discretionary. See In reFleming (1991), 76 Ohio App.3d 30, 38, 600 N.E.2d 1112, citingDorrian v. Scioto Conserv. Dist. (1971), 27 Ohio St.2d 102, 107,271 N.E.2d 834. The general assembly's use of the word "may" in R.C.2152.20(C) indicates that a hearing is optional, not required. Thus, R.C. 2152.20(C) gives the juvenile court discretion to hold a hearing if it deems a hearing necessary. See In re McClanahan, Tuscarawas App. No. 2004AP10004, 2004-Ohio-4113, at paragraph 8.
 {¶ 34} Appellant also argues that since he is indigent, the court should have considered imposing a term of community service in lieu of costs. R.C. 2152.20(D) provides: "If a child who is adjudicated a delinquent child is indigent, the court shall consider imposing a term of community service * * * in lieu of imposing a financial sanction under this section." (Emphasis added.) In statutory construction, the word "shall" is generally construed as mandatory. See Dorrian,27 Ohio St.2d 102, 271 N.E.2d 834, paragraph one of the syllabus. The general assembly's use of the word "shall" in R.C. 2152.20(D) indicates a mandatory requirement, something the court must do. Accordingly, R.C.2152.20(D) requires the court to consider imposing a term of community service instead of a financial sanction if the delinquent child is indigent. However, R.C. 2152.20(D) does not require the court to impose a term of community service in lieu of a financial sanction; it simply indicates that the court must consider it.
 {¶ 35} In this case, the trial court was aware of appellant's indigency. The trial court had previously appointed counsel and a guardian ad litem. Furthermore, the trial court indicated that it was very familiar with appellant due to his repeat appearances before the court for multiple offenses. There is nothing in the record to suggest that the *Page 12 
trial court failed to consider community control instead of a financial sanction. Furthermore, R.C. 2152.20 does not require the trial court to conduct a separate hearing to determine appellant's ability to pay nor does the statute mandate community control sanctions for an indigent juvenile. See In re Seavolt, Morrow App. Nos. 2006-CA-0010, 2006-CA-0011, 2007-Ohio-2812.
 {¶ 36} For these reasons, we do not find that the trial court erred in failing to conduct a hearing on the issue of costs pursuant to R.C.2152.20(C) and in failing to impose a term of community service in lieu of a financial sanction.
 {¶ 37} Accordingly, appellant's third assignment of error is hereby overruled.
 IV {¶ 38} In the fourth assignment of error appellant argues that he was denied the effective assistance of counsel. Specifically, appellant argues that counsel was ineffective for his failure to competently advocate against the imposition of a DYS commitment, his failure to request a hearing on the imposition of costs and his failure to object to the magistrate's recommendation that appellant be adjudicated a delinquent. We disagree.
 {¶ 39} An accused juvenile has a constitutional right to counsel and the same rights to effective assistance of counsel as an adult criminal defendant. In re Gault (1967), 387 U.S. 1, 41, 87 S.Ct. 1428,18 L.Ed.2d 527; In re Dunham (Nov. 7, 1997), 1st Dist. Nos. C-960399 and C-960400. The standard for determining whether counsel was ineffective in actions affecting orders of dispositions made by juvenile courts is the same as that applied in criminal cases. In re Rackley (July 16, 1997), 9th Dist. No. 18139. *Page 13 
 {¶ 40} The reversal of a conviction for ineffective assistance of counsel requires the defendant to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. State v. Smith, 89 Ohio St.3d 323, 327, 2000-Ohio-166,731 N.E.2d 645, citing Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136, 142, 538, 538 N.E.2d 373 N.E.3d 373. Essentially, defense counsel's performance must fall below an objective standard of reasonableness to be deficient in terms of ineffective assistance of counsel. SeeBradley. Moreover, the defendant must show that there exists a reasonable probability that, were it not for counsel's errors, the results of the proceeding would have been different. State v.White, 82 Ohio St.3d 16, 23, 1998-Ohio-363, 693 N.E.2d 772. If one component of the test disposes of an ineffective assistance of counsel claim, it is not necessary to address both components. Strickland;Bradley. Furthermore, counsel's failure to raise a meritless issue does not constitute ineffective assistance. In re Carter, Jackson App. Nos. 04CA15 and 04CA16, 2004-Ohio-7285 at paragraph 41; State v. Knott, Athens App. No. 03CA30, 2004-Ohio-5745, at paragraph 35.
 {¶ 41} One of appellant's theories of ineffective assistance of counsel is premised upon the arguments raised in his third assignment of error. Specifically, appellant maintains that his counsel was ineffective for failing to request a hearing to determine whether the appellant was able to pay financial sanctions, and for failing to object to the trial court's failure to consider community service in lieu of those sanctions. As discussed in our analysis of appellant's third assignment of error, the trial court was not required to hold the hearing authorized by R.C. 2152.20(C), and the record does not *Page 14 
indicate that the trial court violated R.C. 2152.20(D) by failing to consider community service in lieu of financial sanctions.
 {¶ 42} Appellant further argues that counsel was ineffective for failure to object to the magistrate's decision. Appellant is not specific about the exact objection. However, the record reflects that on December 6, 2006, counsel filed an objection to the decision which was considered and overruled by the trial court.
 {¶ 43} Finally, appellant argues that appellant was ineffective for failing to competently advocate against the imposition of a DYS commitment. However, we find no merit to this argument. The record reflects that appellant had an extensive history with the trial court. During the dispositional phase the magistrate stated in relevant part as follows:
 {¶ 44} "[E]fforts have been made to maintain you in the community * * * the probation department has bent over backwards. You have more probation violations more misdemeanor charges. You've had multiple shots, including opportunities that I've given you * * * I've only been here nine months now and you've been before me many, many times." (T. at 136).
 {¶ 45} Furthermore, the State was advocating to eliminate credit for time served. Appellant's counsel successfully advocated on appellant's behalf and convinced the court to grant appellant credit for approximately two months toward his minimum one (1) year commitment
 {¶ 46} Therefore, we find that appellant's counsel did not deliver a deficient performance. *Page 15 
 {¶ 47} Accordingly, appellant's fourth assignment of error is hereby overruled.
 {¶ 48} The judgment of the Licking County Court of Common Pleas, Juvenile Division is hereby affirmed.
By: Edwards, J. Gwin, P.J. and Wise, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas, Juvenile Division is affirmed. Costs assessed to appellant.
[1] Officer Wells also recognized Willie Haines as being an unlicensed driver and instructed him to leave the driver's seat. Haines and a female passenger changed positions in the car prior to their departure from the scene. *Page 1