KNAUER, Appellee,

v.

KEENER, Appellant.

[Cite as *Knauer v. Keener* (2001), 143 Ohio App.3d 789.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 2000–CA–101.

Decided June 15, 2001.

---

*Thor G. Ronemus,* for appellee.

*William O. Cass, Jr.,* for appellant.

---

FAIN, Judge.

Defendant-appellant Rodney S. Keener appeals from the denial of his request for a change of the surname of his child, Zachariah A. Knauer, born March 29, 2000. Keener contends that the trial court abused its discretion when it denied his request.

Although we find no abuse of discretion in the trial court's decision not to change Zachariah's surname to Keener, we conclude that the trial court erred when it failed to consider Keener's alternate argument, in support of his objection to the magistrate's decision denying his request, that Zachariah's surname should be hyphenated to include both parents' surnames. Accordingly, the judgment of the trial court is reversed, and this cause is remanded for consideration of that argument.

I

Zachariah was born March 29, 2000, the child of Keener and plaintiff-appellee Crystal J. Knauer, who were not married. Keener acknowledged himself to be the natural father of Zachariah in a paternity proceeding in June 2000. As a result, a child support order was issued. Keener then filed a complaint seeking an order of visitation and requesting a change of the child's surname to his own surname.

Following the hearing on Keener's complaint, the magistrate rendered a decision holding that "the evidence submitted in accordance with the aforesaid guidelines [as set forth in *Bobo v. Jewell* (1988), 38 Ohio St.3d 330, 528 N.E.2d 180, and *In re Change of Name of Andrews,* 235 Neb. 170, 454 N.W.2d 488] is not compelling in favor of changing the child's surname."

Keener objected to this decision. At the conclusion of his objection, Keener wrote:

"Alternatively, in the event this Court denies Defendant's request to change his child's surname, Defendant respectfully requests [that] this Court consider changing the child's name to a hyphenation of both parties surnames, Knauer Keener."

The trial court held a hearing on the objections. At the conclusion of Keener's oral argument at this hearing, Keener reiterated his desire that the child's surname at least be hyphenated.

In its decision overruling Keener's objection, after laying out the applicable law pertaining to the change of a child's surname, the trial court held as follows:

"In consideration of the foregoing and upon independent review of the transcript of the hearing which took place July 27, 2000 and upon review of the Magistrate's Decision filed August 1, 2000, this Court finds that the Magistrate herein was provided with ample, credible and competent information going to each and every essential element concerning this issue and the Court fails to find error in the Magistrate's decision as it relates to this issue. In further consideration of the foregoing, the Court finds that the Defendant's Objection in this regard is not well taken."

From the order of the trial court denying his request to change his child's surname, Keener appeals.

## II

Keener's sole assignment of error is as follows:

"The trial court erred in affirming the magistrate's decision to overrule the appellant's name change motion. The trial court's decision constituted an abuse of discretion because the evidence and case law overwhelmingly supported the appellant's motion being granted, at least ordering a hyphenated surname."

Based upon our review of the record, including the transcript of the brief hearing on the change of surname issue, we are not persuaded that the trial court abused its considerable discretion by deciding that it would not be in the child's best interest to change his surname to his father's surname. One of the considerations is the embarrassment, discomfort, or inconvenience that may result when a child bears a surname different from the custodial parent's. *Bobo v. Jewell* (1988), 38 Ohio St.3d 330, 335, 528 N.E.2d 180, 185–186. In our view, this consideration could have led the trial court properly to conclude that Zachariah, growing up and going to school while living in the household of his mother, as the residential parent, might be subjected to embarrassment, discomfort, or inconvenience as the result of having a different surname.

The most recent articulation of the law pertaining to a divorced or unmarried parent's request to change a child's surname is set forth in *In re Willhite* (1999), 85 Ohio St.3d 28, 706 N.E.2d 778. In that case, the child was three years old at the time of the hearing. In the case before us, the child was four months old at the time of the hearing. In both cases, the child's existing surname had not been firmly established in the child's mind as part of his or her identity. In both cases, unlike in *In re Budenz* (1999), 133 Ohio App.3d 359, 728 N.E.2d 24, there was no stigma attached to either parent's surname; in other words, there was no reason opposing the child's identification with the surname of either parent.

In *Willhite,* the trial court had rejected an application by the residential parent, the child's mother, to change the child's surname from that of the child's father to a hyphenated surname. The Supreme Court held that the trial court abused its discretion in declining to do so. After reciting the applicable factors guiding the trial court's discretion, the Supreme Court reasoned as follows:

"Williams is not attempting to give her daughter a new identity by eliminating the father's name. Rather, Williams is seeking to have both parents' surnames hyphenated and combined as the surname for the daughter the two parties share. Williams is not seeking to distance her ex-husband from their daughter. Instead,

she is seeking to foster her daughter's affiliation with both parents, who have different surnames. See *In re Change of Name of Andrews*, 235 Neb. at 178, 454 N.W.2d at 493. 'A dual name would help the child identify with both parents, a state of mind that child psychologists say is essential to the child's adjustment to divorce.' Seng, [Note, Like Father Like Child: The Rights of Parents in their Children's Surnames (1984)], 70 Va.L.Rev. at 1350, citing Cochran & Vitz, Child Protective Divorce Laws: A Response to the Effects of Paternal Separation on Children (1983), 17 Fam.L.Q. 327, 333–334, 353. Further, a combined surname gives the child a greater sense of security. *Id.*

"Equally important, with the name addition, Williams seeks to avoid the confusion so prevalent with having a mother and child in the same household with two different surnames. The addition of the maternal surname may aid in avoiding confusion and embarrassment at school, at the doctor's office, at church, in sports or other social activities, and within the community. The child with a combined surname does not have to explain why his or her last name is different.

"A combined surname is a solution that recognizes each parent's legitimate claims and threatens neither parent's rights. The name merely represents the truth that both parents created the child and that both parents have responsibility for that child. Seng, *supra*, 70 Va.L.Rev. at 1348. Accordingly, we reverse the judgment of the court of appeals and remand the cause to the probate court for disposition consistent with this opinion." *Willhite, supra*, at 33, 706 N.E.2d at 782–783.

In this unanimous opinion, the Supreme Court expressed a strong preference for a hyphenated surname for a child who is young enough not to have established an existing surname as part of his or her identity, and who has a relationship with each of two parents who are living in separate households. That preference was strong enough to justify a holding that the trial court had abused its discretion in that case by declining a request to change the child's existing surname.

Based upon *In re Willhite*, we conclude that the trial court in the case before us erred when it failed to consider Keener's alternate request for a hyphenated surname for his child. The trial court deferred to the decision of its magistrate by applying an appellate standard of review to reject the objections to the magistrate's decision. In adopting the decision of the magistrate, the trial court found that the decision was supported by "ample, credible and competent information" and that it could not "find error" in the magistrate's decision.

Civ.R. 53(E)(3)(b) contemplates a *de novo* review of any issue of fact or law that a magistrate has determined when an appropriate objection is timely filed. The trial court may not properly defer to the magistrate in the exercise of

the trial court's *de novo* review. The magistrate is a subordinate officer of the trial court, not an independent officer performing a separate function. If the recent amendment to Civ.R. 53 were to be construed otherwise, that would result in the creation of approximately six hundred new statutory and constitutional courts in Ohio, presided over by judicial officers who are not directly accountable to the electorate. We do not understand that the Ohio Supreme Court or the General Assembly intended that result when Civ.R. 53 was amended.

Although we conclude that the trial court erred when it failed to consider Keener's alternate request that the surname of the parties' son be hyphenated, we hasten to add that we are not directing the trial court to *grant* Keener's request but merely to consider it. Applying the considerations articulated in *Willhite*, granting Keener's request to hyphenate his son's surname may, in the circumstances of this case, create, rather than diminish, confusion. The mother and child, who now have the identical surname, would then have different surnames, creating the potential for confusion that the court, in *Willhite*, sought to minimize. Compounding the difficulty, the mother may soon marry another man. If she then abandons the surname by which the child is known, the mother and child will then have no name in common.

Keener justifies his request for an order establishing a hyphenated surname on two grounds. As one ground, he asserts that he intends to play an active role in the child's development. That is laudable, but it is presently entirely prospective, the child being but an infant, in whose life Keener has not yet played a role. As another ground, Keener argues that because he pays support for the child, the child should bear his name, at least partially. The tradition of regarding a child's surname as a quid pro quo for the father's financial support was criticized in *Willhite*, the court noting that the tradition "ignores the mother's parallel duty to support the child," "rewards the father for doing that which he is already legally, if not morally, required to do," and "[unreasonably] equat[es] the best interest of the child with dollars * * *." *Id.* at 31, 706 N.E.2d at 781.

We commend the decision whether to hyphenate the surname of the child of the parties to the trial court's discretion, without directing the trial court how to exercise that discretion. To the extent that we conclude that the trial court erred by failing to consider Keener's alternate request for the hyphenation of his child's surname, his sole assignment of error is sustained.

### III

Keener's sole assignment of error having been sustained, the order of the trial court denying the request to change Zachariah's surname is reversed, and this

cause is remanded for consideration of Keener's alternate request that Zachariah's surname be hyphenated.

*Judgment reversed*
*and cause remanded.*

GRADY and FREDERICK N. YOUNG, JJ., concur.