OPINION
{¶ 1} Appellant Joseph Hess appeals the decision of the Jefferson County Common Pleas Court, Juvenile Division, which terminated his parental rights and gave permanent custody of his son to appellee Jefferson County Children Services Board. This appeal presents issues concerning whether the court found sufficient evidence to satisfy the clear and convincing standard of proof, whether the agency delayed the case without good reason, whether the court lost jurisdiction when temporary custody exceeded one year, and whether the court erred in refusing to appoint an expert psychologist. For the following reasons, the decision of the trial court is affirmed.
 STATEMENT OF THE CASE {¶ 2} On December 16, 2000, appellant was taking care of his five-month-old son, Joseph Hess, Jr. Appellant was on house arrest at the time for driving under the influence. He called a hospital and then the child's mother at work to report that the child was experiencing seizure-like activity. The mother, Dennieal Bailey, came home and transported the child to Weirton Medical Center. The child was then transferred to Children's Hospital in Pittsburgh where he remained for three nights. The child suffered from a subdural hemorrhage, said to be caused by blunt force trauma, and retinal bleeding, said to be caused by shaking.
 {¶ 3} On December 18, 2000, an ex parte order was issued giving CSB emergency custody. The next day, the child's mother attended a hearing where the court found probable cause for the shelter care and where the mother agreed with CSB's request for temporary custody. Appellant did not attend as he had been arrested for felonious assault and child endangering which was also a felony due to the serious physical harm specification that was attached. In mid-2001, appellant entered into a plea agreement with the state whereby the state dismissed the felonious assault and serious physical harm specification and appellant pled guilty to first-degree misdemeanor child endangering in violation of R.C.2919.22(B)(1), which states that no person shall abuse a child.
 {¶ 4} On January 16, 2001, CSB filed a complaint alleging abuse and asking for temporary custody. The hearing was re-scheduled multiple times. The case plan called for the mother to attend a psychological evaluation, which she did. The case plan called for appellant to seek treatment for alcoholism and refrain from further arrests, especially for driving under the influence. Yet, he was subsequently arrested for DUI on February 14, 2002 and again on May 31, 2002. (Tr. 12). He also failed to sign a release so CSB could determine whether he attended any treatment programs. Further, the case plan stated that if the parents resume their relationship, they must attend therapy to deal with their relationship issues and properly resolve conflict. However, there is no evidence that any such therapy took place upon the parents' reunion. The guardian ad litem's initial report advised that she could not recommend returning the child to the mother due to the fact that the child received serious physical injuries while living with the parents and because the mother exercised poor judgment in resuming her relationship with appellant who has a history of alcohol abuse.
 {¶ 5} On December 17, 2001, CSB filed a request for permanent custody, and then filed a motion to amend the complaint accordingly. On January 25, 2002, CSB filed another motion for permanent custody, with an attached notice to the parents of the effect of the proceedings. On April 9, 2002, CSB successfully filed a motion to amend the complaint to include a request for a dependency finding.
 {¶ 6} A hearing was held before the magistrate on June 26, 2002. The magistrate's decision was filed that same day. The magistrate found that the mother did not engage in acts resulting in abuse, neglect, or dependency. The magistrate found there was no clear and convincing evidence upon which it could base a decision to terminate the parental rights of the mother. The magistrate thus terminated temporary custody and returned custody to the mother. Realizing that the mother lived with the father, the magistrate stated that the day care provider who cared for the mother and father's newborn should care for this child when the mother was at work. The magistrate also ordered protective supervision for a period of one year.
 {¶ 7} In explaining its decision, the magistrate did not specifically state that the child was abused in general or by the father. However, because the magistrate proceeded to a dispositional hearing and entered a dispositional order, he must have so adjudicated the child. This is because the trier of fact cannot proceed to a dispositional hearing if the child is not adjudicated abused, neglected, or dependent; nor can the trier of fact enter a dispositional order of protective supervision if the child has not been adjudicated abused, neglected, or dependent. See R.C. 2151.353(A)(1); Juv.R. 29(F)(1) and (2)(a). In the case of In re Cunningham (Dec. 12, 2001), 7th Dist. No. 01-527-CA, this court held that one could not appeal the adjudicatory aspects of the case if the court failed to enter an adjudication. We reversed and remanded due to such procedural irregularities and ripeness problems. Here, neither the magistrate nor the trial court specifically found that the child was abused. Yet, appellant does not seem to raise this issue on appeal. Additionally, in Cunningham, we noted that the dispositional order would have been reviewable if any of the assignments of error in that case related to disposition. Here, the assignments of error speak directly to the dispositional order of permanent custody. Furthermore, neither the mother nor appellant objected to the dispositional order of protective supervision or the failure of the magistrate to explicitly adjudicate the child. Thus, appellant waived any such procedural irregularities at that point. As such, we continue our analysis.
 {¶ 8} Returning to the statement of the case, CSB failed to file timely objections. However, on July 18, 2002, CSB sought and the court granted fourteen days leave to file objections on the grounds that they were not served with the magistrate's decision until July 16, 2002. CSB then filed its objections on July 24, 2002. CSB alleged that the decision was against the manifest weight of the evidence and argued there was clear and convincing evidence to support an order of permanent custody. CSB noted that the child had been in the temporary custody of the agency for twelve months of a consecutive twenty-two month period as set forth in R.C. 2151.414(B)(4). CSB then alternatively cited R.C. 2151.414(B) and (E) and stated that the child could not or should not have been placed with either parent within a reasonable period of time. CSB also contended that an order of permanent custody would be in the child's best interests, citing R.C. 2151.414(D)(1) through (5). Only the mother responded to the objections. Appellant did not respond.
 {¶ 9} On August 19, 2002, the trial court sustained CSB's objections, rejected the decision of the magistrate, and granted permanent custody to CSB. Appellant filed timely notice of appeal. The mother did not appeal the decision.
ASSIGNMENT OF ERROR NUMBER ONE
 {¶ 10} Appellant sets forth four assignments of error, the first of which contends:
 {¶ 11} "The Trial Court Erred By Failing To Make A Determination That The Court Had Sufficient Evidence To Satisfy The Clear And Convincing Standard In The Judge's Entry Overruling The Magistrate And Awarding Permanent Custody To The Jefferson County Children Services."
 {¶ 12} Appellant argues that the trial court was required to list reasons for terminating parental rights in the judgment entry. He claims that the court failed to consider and list the reasons for its decision under R.C. 2151.414(E). He cites In re William S. (1996), 75 Ohio St.3d 95
in support of this argument. He also cites In re Fleming (1991),76 Ohio App.3d 30 for the proposition that the court is mandated to issue findings of facts under Juv.R. 40(D).
 {¶ 13} Firstly, William S. does not state that findings of fact and conclusions of law are required per se. Rather, that case specifically noted that the father requested findings and conclusions and then reviewed whether the findings made were sufficient to support an award of permanent custody. In re William S., 75 Ohio St.3d at 96. Secondly, Fleming concerned interpretation of the prior version of Juv.R. 40 and found that "referees" were required to issue findings of fact and recommendations. In re Fleming, 76 Ohio App.3d at 40. Thirdly, although Juv.R. 40 places certain obligations upon the magistrate to issue findings of fact when requested or when otherwise required by law, the rule does not impose an obligation on the trial court to make any findings when rejecting a magistrate's decision. Juv.R. 40(E)(2) and (4)(b).
 {¶ 14} Moreover, the statute dealing with the hearing on the motion for permanent custody as filed in this case expressly states that a court granting permanent custody need only file a written opinion setting forth its findings of fact and conclusions of law if a party requests such opinion. R.C. 2151.414(C). See, also, R.C. 2151.353(A)(4);In re Brandon M. (Apr. 17, 1998), 6th Dist. No. L-97-1144, citing In reCovin (1982), 8 Ohio App.3d 139,141 (holding that although the statute lists numerous determinations to be made on a motion for permanent custody, it does not require these determinations to be specifically listed in the court's judgment entry).
 {¶ 15} Finally, appellant mentions R.C. 2151.414(E), which lists factors for determining whether a child can or should be placed with a parent within a reasonable time, without explaining how he bypasses the language of R.C. 2151.414(B)(1). This section provides that the court may grant permanent custody if the court determines by clear and convincing evidence that it is in the best interests of the child[1] and that any of the following apply:
 {¶ 16} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents."
 {¶ 17} "(b) The child is abandoned."
 {¶ 18} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody."
 {¶ 19} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 20} "For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home."
 {¶ 21} Here, the child had been in temporary custody for at least twelve months of a consecutive twenty-two month period. As such, R.C.2151.414(B)(1)(d) would be applicable rather than R.C. 2151.414(B)(1)(a).
 {¶ 22} This leads us into appellant's argument that the agency did not present evidence sufficient to meet its clear and convincing burden of proof. He makes a blanket statement that the parents completed the case plan; although, he does not state how he complied. In supporting his insufficiency argument, he also tries to discredit Dr. Felter's testimony by pointing out that this physician merely reviewed the medical records and did not physically examine the child. He also complains that Dr. Hewitt's report concerning his evaluation of the mother made statements regarding appellant's parenting ability without having met appellant.
 {¶ 23} Initially, we note that the trial court does not defer to the decision of the magistrate by applying an appellate-like standard of review. Knauer v. Knauer (2001), 143 Ohio App.3d 789, 793. Rather, a trial court reviewing a magistrate's decision conducts a de novo review of factual as well as legal issues. Id. This is because the trial court is the ultimate authority at the trial level and can substitute its judgment for that of the magistrate. Id. at 793-794. See, also, State exrel. Hrelec v. Campbell (2001), 146 Ohio App.3d 112, 117, citing Harttv. Munobe (1993), 67 Ohio St.3d 3, 5; Kubin v. Kubin (2000),140 Ohio App.3d 367, 371. As such, at the appellate level, the trial court's decision to reject the decision of the magistrate is reviewed only for an abuse of discretion. Coffland v. Coffland, 7th Dist. No. 01-535-CA, 2002-Ohio-5999, at ¶ 11; In re Jane Doe, 7th Dist. No. 01CA153, 2002-Ohio-5210, at ¶ 7, citing Conti v. Christoff, 7th Dist. Nos. 99CA84, 99, 2001-Ohio-3421, at ¶ 22. Thus, we need only determine if the trial court's decision was unreasonable, unconscionable, or arbitrary. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 24} Here, the child was in appellant's care when it experienced seizure-like activity and required hospitalization. The child suffered from a subdural hemorrhage, which was thought to be caused by blunt force trauma, and retinal bleeding, which was thought to be caused by shaking. The medical expert, who was qualified without objection, testified that the child's injuries were definitely abusive. He opined that there was no way they could be accidental except by way of a significant motor vehicle accident of which there was no evidence. Regardless, the child's injuries established more than one incident of trauma. This expert also noted that the five-month-old's injuries could not have been caused at birth as the bleeding was acute.
 {¶ 25} Appellant arrived at Pittsburgh Children's Hospital in what appeared to be an intoxicated state. At that time, appellant was on house arrest and subsequently had his probation revoked. Although the case plan required appellant to seek alcohol treatment and to sign all releases requested by the agency, he would not sign a release of information to prove he sought treatment. Although the case plan insisted that appellant refrain from abusing alcohol and from being arrested, especially for driving under the influence, appellant was arrested for his second and third drunk driving violations before the hearing. In spite of this, he does not admit that he has a drinking problem.
 {¶ 26} Although the case plan stated that the mother and appellant should receive counseling if their relationship ever resumed, they moved back in together without receiving such counseling. The psychologist who evaluated the mother opined that she did not appreciate the risk to the child or the extent of the damage to the child. The mother told the psychologist that appellant does not have a drinking problem, but she then admitted at the hearing that he does.
 {¶ 27} Reunification was the initial goal when the mother told the agency that she would not resume her relationship with appellant; however, when he was released from incarceration, she did in fact resume her relationship as she was pregnant with his second child. The mother admitted that the agency advised her that the only way to get her child back was to stay away from appellant; however, when the results were not immediate, she resumed her relationship with appellant. The mother testified that she has never agreed that the child was abused. Appellant testified that he did not abuse the child.
 {¶ 28} Pursuant to R.C. 2151.031(B), a child is abused if that child is endangered under R.C. 2919.22, even if there has been no conviction under that section. Here, there in fact was a conviction under that section. As aforementioned, appellant entered into a plea bargain whereby the state dropped the felonious assault charge and the serious physical harm specification on the child endangering charge. In return, appellant pled guilty to the child endangering charge. This chargeexplicitly contains abusing a child as one of its elements. R.C.2919.22(B)(1). The fact that the final offense was a misdemeanor does not exceptionally lessen appellant's culpability. Appellant cannot avoid the inescapable conclusion that he pled guilty in the criminal court to abusing his child.
 {¶ 29} In reviewing the above facts, it is not unreasonable for the trial court to be firmly convinced that CSB met its burden of establishing that appellant's parental rights should be terminated. Clear and convincing evidence is that measure of proof which is more than a mere preponderance of the evidence but less than beyond a reasonable doubt; it is that evidence which will produce in the mind of the fact-finder a firm belief or conviction as to the facts sought to be established. State v. Schiebel (1990), 55 Ohio St.3d 71, 74. If the issue is mainly one of credibility, we do not substitute our judgment based on what we believe would be more forgiving. See, e.g., In re Wingo (2001),143 Ohio App.3d 652, 660. In fact, the court is not to consider the effect the granting of permanent custody would have upon either parent. R.C. 2151.414(C).
 {¶ 30} We conclude that there existed sufficient evidence for the court to find by clear and convincing evidence that permanent custody was warranted. Thus, the trial court did not abuse its discretion in rejecting the magistrate's decision. The trial court, as the ultimate authority at the trial level, was permitted to determine that appellant was not credible and to determine that the evidence weighed heavily against his denials, creating a firm conviction that permanent custody should be granted to the agency. Accordingly, this assignment of error is overruled.
ASSIGNMENT OF ERROR NUMBER TWO
 {¶ 31} Appellant's second assignment of error alleges:
 {¶ 32} "The Agency Should Not Have Been Permitted To Continue The Case An Excessive Number Of Times Which Delayed Any Disposition Of The Case And Prevented The Matter From Being Heard Within The Time Period Allowed For The Agency To Move For Permanent Custody."
 {¶ 33} The child was placed in shelter care on December 18, 2000, and the complaint alleging abuse was filed on January 16, 2001. CSB claims that in the first half of 2001, all the extensions and continuances were either entered by the court sua sponte or sought by appellant because he wished to resolve his criminal case before proceeding with the juvenile case. We note that appellant was sentenced on the criminal case on August 13, 2001.
 {¶ 34} From the record, we discern that the case was continued at the beginning due to an unsuccessful attempt to serve the mother. Additionally, part of the case plan required the mother to undergo psychological evaluation. Yet, she did not schedule her appointments and attend her sessions until April 24 and May 5, 2001. We also notice that appellant's originally appointed counsel in juvenile court had to be replaced in May 2001.
 {¶ 35} As CSB points out, the agency did not seek a continuance until September 5, 2001. The memorandum in support stated that the report of the psychologist who evaluated the mother was not yet completed. The hearing was then rescheduled for November 1, 2001. However, CSB filed another motion for a continuance on the grounds that a key witness was unavailable and the agency's on-site psychologist recently resigned. The court then continued the matter until January 17, 2002, by which time CSB moved for permanent custody. Then, on the scheduled hearing date of January 17, the court continued the hearing until March 6, 2002.
 {¶ 36} On January 24, 2002, CSB filed its third motion for a continuance on the grounds that a key witness, Dr. Berger of Pittsburgh Children's Hospital, would be unable to attend the March 6 hearing due to her on-call status. On February 1, appellant filed a reply to this latest motion for a continuance. Appellant complained about CSB's delay tactics and urged that the agency could depose the physician. On February 21, 2002, the magistrate found good cause for granting CSB's request and rescheduled the hearing for April 25, 2002. However, this was later changed by the court to May 1, 2002.
 {¶ 37} On March 14, 2002, CSB filed its fourth motion for a continuance on the grounds that Dr. Berger was prepared to attend the April 25 hearing but would be unavailable for the rescheduled May 1 hearing. The court agreed to continue the case until May 16. This date was later rescheduled to June 26, 2002 on the request of appellant's counsel who claimed that she did not receive notice of the latest date. The hearing finally proceeded on June 26, 2002.
 {¶ 38} Appellant complains that CSB improperly continued the case "for no good reason." Appellant accuses CSB of delaying the case to create a reason to seek permanent custody. Appellant notes that temporary custody has a one-year expiration date. Appellant relies on a quote from the case of In re Omosun Children (1995), 106 Ohio App.3d 813, where the Eleventh District stated, "twenty-eight months of limbo in a juvenile dispositional hearing is, in our opinion, a per se due process violation, barring extraordinary circumstances." Id. at 818.
 {¶ 39} Pursuant to Juv.R. 23, "Continuances shall be granted only when imperative to secure fair treatment for the parties." The decision to grant a continuance of a permanent custody proceeding lies within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. In re Zhang (1995), 135 Ohio App.3d 350, 354. Appellant did not object to the magistrate after the agency requested the first two continuances or the last continuance. Moreover, the state presented what could be considered to be good cause for these continuances. Additionally, after the last continuance requested by the state, the case had to be continued at the request of appellant's counsel. We recognize that appellant did object to the magistrate with regards to the agency's third request for a continuance. Pursuant to Juv.R. 40(C)(3)(a)(viii) and (b), appellant could have filed an objection to the trial court from the magistrate's grant of this continuance. However, appellant did not do so.
 {¶ 40} As for appellant's quote from Omosun, we note that the quote was made in response to a trial court that waited twenty-eight months after the dispositional hearing to file the dispositional order which was required to be filed within seven days of the hearing and which contained a conclusion that was against the manifest weight of the evidence. Here, the magistrate's order was entered immediately after the hearing. Regardless, Omosun has been overruled by the Ohio Supreme Court in the case of In re Davis (1999), 84 Ohio St.3d 520, where the Court specifically addressed an appeal that had been certified as being in conflict with Omosun. In that case, the Court found that where a juvenile judge waited eighteen months to release its dispositional order, the parties could not complain of prejudice or due process violations onappeal where the time limit section of the statute does not specifically provide a remedy; rather, the proper avenue would have been to file a writ of procedendo to force the judge to discontinue the unnecessary delay. Id. at 524. As such, it appears to this court that, although a speedier process would have been preferable, we cannot reverse the trial court's grant of the continuances under the circumstances herein.
 {¶ 41} Finally, in response to appellant's statement that temporary custody has a one-year sunset date, we note the language of R.C. 2151.353(F). This section states that a temporary custody order terminates one year after the earlier of the date on which the complaint was filed or the child was first placed into shelter care, except that upon the filing of a motion under R.C. 2151.415, the temporary custody order shall continue and not terminate until the court issues a dispositional order under that section. Here, CSB filed a motion for permanent custody. This argument is more related to and leads into appellant's next assignment of error.
ASSIGNMENT OF ERROR NUMBER THREE
 {¶ 42} Appellant's third assignment of error argues:
 {¶ 43} "The Juvenile Court Actually Erred In Granting Permanent And Legal Custody In That It Lacked Jurisdiction And Authority To Issue A Decision When The Statutory Time Requirements Had Expired."
 {¶ 44} Under this assignment of error, appellant sets forth one paragraph in support. He cites R.C. 2151.353(F) and states that temporary custody terminates one year after the child is placed in shelter care or a year after the complaint was filed, whichever is earlier. He notes that temporary custody was thus to terminate on December 17, 2001, one year after the child was placed in shelter care. He concedes that this statute provides that custody continues until a dispositional order is issued if the agency filed a motion requesting a certain disposition. However, rather than recognizing that the agency filed a motion for permanent custody and arguing that the agency did not file it thirty days before termination of temporary custody as required by R.C. 2151.415(A), he argues that the agency did not properly file a motion for extension of temporary custody. Finally, he cites In re Nice (2001), 141 Ohio App.3d 445
for the proposition that he did not waive his argument by failing to appeal the extension of temporary custody.
 {¶ 45} Addressing his latter statement first, the juvenile court did not grant an extension of temporary custody. Thus, we do not glean how a citation to Nice assists appellant. Rather, temporary custody is to continue under R.C. 2151.353(F) if a motion for permanent custody is filed. Appellant does not specifically argue that the motion for permanent custody was untimely under R.C. 2151.415(A), which states that it is to be filed thirty days before the earliest of the date for the dispositional hearing or the date temporary custody is to terminate. Even if appellant had raised this argument, it would fail.
 {¶ 46} If anything, Nice should have revealed to appellant that "a juvenile court does not lose jurisdiction to enter dispositional orders upon technical termination of temporary custody due to the expiration of the sunset date." Nice, 141 Ohio App.3d at 453, citing In re YoungChildren (1996), 76 Ohio St.3d 632, 636 and Holloway v. Clermont Cty.Dept. of Human Serv. (1997), 80 Ohio St.3d 128, 130-131. In Young, the Supreme Court held that the passing of the temporary custody sunset date without a timely motion for permanent custody does not deprive the juvenile court of jurisdiction to enter a dispositional order, especially where, as here, the problems that led to removal are unresolved.76 Ohio St.3d at 638-639.
 {¶ 47} Note that appellant does not raise any arguments regarding failure to hold the adjudicatory and/or the dispositional hearing within certain time limits. See In re Kimble (May, 15, 2002), 7th Dist. No. 99-517-CA (where we held that such time limits are not jurisdictional and can be waived). For the foregoing reasons, we must overrule this assignment of error.
ASSIGNMENT OF ERROR NUMBER FOUR
 {¶ 48} Appellant's fourth and final assignment of error contends:
 {¶ 49} "The Court Erred By Not Allowing The Appellant An Opportunity To Have His Own Expert Psychologist Or Any Other Expert To Assist Him In Violation Of His Due Process Rights Guaranteed Under TheFourteenth Amendment Of The United States Constitution."
 {¶ 50} On March 12, 2002, appellant filed a motion for an expert at state expense. Specifically, he sought appointment of "a child psychologist to rebut the psychological finding of unsuitability made by the State's expert" who evaluated the mother. He attached the curriculae vitae of his chosen expert. On March 19, 2002, the magistrate denied this request, citing to Juv.R. 32.
 {¶ 51} This rule states that the court may order and utilize a mental examination under certain listed circumstances. Juv.R. 32(A). The only listed circumstances which are arguably relevant herein are: where a party requests that he be examined or where a material allegation of a neglect, dependency, or abuse complaint relates to matters that an examination may clarify. Juv.R. 32(A)(1) and (3). Note the permissive use of "may" in the rule.
 {¶ 52} Because the initial decision was made by a magistrate, we must look to Juv.R. 40 before proceeding with the due process analysis. Pursuant to Juv.R. 40(C)(3)(a)(x), a magistrate may enter an order effective without judicial approval in pretrial proceedings including orders for social histories and physical and mental examinations pursuant to Juv.R. 32. Immediately thereafter, Juv.R. 40(C)(3)(b) provides that a decision under Juv.R. 40(C)(3)(a) may be appealed to the court by filing a motion to set aside the order stating the objections with particularity no later than ten days after the magistrate's order is entered.
 {¶ 53} Appellant's brief states that he filed objections to the denial of his motion. However, his objections were filed on April 4, 2002, considerably past the ten-day deadline, with no stated reasons for missing the deadline. On April 8, 2002, the trial court determined that it could not rule on the objections as the filing did not meet Juv.R. 40(C)(3). On appeal, appellant does not mention that his objections were untimely and does not allege that the trial court should have ruled on the objections. Rather, appellant states that the court overruled his objections and argues that the court ruled erroneously in violation of his due process rights and case law interpreting these rights. However, as stated, the court did not overrule his objections but refused to address them based on their untimeliness under Juv.R. 40(C)(3)(b).
 {¶ 54} Even if we review the merits of the issue, appellant's argument fails. Appellant cites In re Shaeffer Children (1993),85 Ohio App.3d 683 in support of his position. In that case, the Third Appellate District used a three-factor test set forth by the United States Supreme Court to determine whether the process granted by the state is constitutionally adequate where a court denies a parent a psychiatric expert at state expense. Id. at 690, citing Mathews v. Eldridge (1976),424 U.S. 319, 334-335, 96 S.Ct. 893, 903-904, 47 L.Ed.2d 18, 33 (setting forth the following factors: (1) private interest affected; (2) risk of erroneous deprivation of interest and probable value of additional or substitute procedural safeguards; and (3) government interest, including administrative and fiscal burdens).
 {¶ 55} The result of Shaeffer is highly distinguishable from the case at bar and even specifically indicates that it would not be applicable to the case herein. For instance, the Shaeffer Court stated:
 {¶ 56} "The issue of a parent's mental or emotional health does not arise in all permanent custody proceedings and * * * we suspect that a minor percentage of such cases are those where a parent's mental health is the predominant or sole determinative issue. * * * We are not holding that due process requires the appointment of a psychiatric expert in every permanent custody proceeding where a parent's mental health is made an issue." Id. at 691.
 {¶ 57} Rather, the court found that due process required appointment of an expert in that case because the indigent parent's mental health was clearly the predominant and determinative issue. Id. See, also, In re Bolser (Jan. 31, 2000), 12th Dist. Nos. CA00-02-038, CA-99-03-048 (adopting the test requiring that the parent's mental health be clearly the predominant or determinative issue). There are other cases which support appointment of a psychiatric or psychological expert only for an indigent parent whose mental health is the determinative issue and/or where that parent was ordered to undergo a psychiatric evaluation.
 {¶ 58} The Tenth District held that an expert only need be appointed to an indigent parent who is alleged to have mental problems "when the indigent parent's mental condition is central to the dependency, neglect, or abuse determination and/or forms the basis of the agency's motion for permanent custody." In re Hogle (June 27, 2000), 10th Dist. No. 99AP-944, citing In re Penny Sue Stanley (Dec. 7, 1993), 10th Dist. No. 93AP-972. The Hogle Court concluded that the appellant's mental condition was not the basis upon which the motion for permanent custody was filed and was not the basis upon which the trial court granted the state's motion. Thus, in reviewing a claim of ineffective assistance of counsel for failing to seek an expert, the court found no prejudice. Id.
 {¶ 59} The Sixth District has also held that where substance abuse, rather than mental health, is the primary or principal reason for a complaint or request for permanent custody, then counsel is not ineffective for failing to seek an expert. In re Deja H. (Aug. 20, 1999), 6th Dist. No. L-99-1038.
 {¶ 60} The First District has stated that due process requires appointment of an expert to assist an indigent parent in a permanent custody proceeding in which the parent's "mental condition is at issue."In re Brown (Nov. 26, 1986), 1st Dist. No. C-850878 (holding that an indigent parent is entitled to the assistance of a psychiatric expert where the complaint is based on that parent's chronic schizophrenia). Although this test may seem a bit more lenient than that set forth inHolger and Shaeffer, which require the mental condition to be thecentral issue, appellant would still not meet the Brown test as he was not faced with an allegation of a mental illness which he needed to counter, nor was his mental condition at issue.
 {¶ 61} Prior to their Deja H. decision, the Sixth District held an indigent parent is entitled to appointment of an expert where that parent has been ordered to undergo a psychological evaluation by an examiner selected and paid for by the state who is seeking to destroy parental rights. In re Jefferey S. (Dec. 18, 1998), 6th Dist. No. L-96-178. They reasoned that appointment was required in order to equalize the parties' position. Id. They concluded that because both parents were evaluated by an expert selected by the state, the court erred in denying the father's motion for appointment of an expert. Id.
 {¶ 62} In conclusion, appellant was not ordered to undergo psychological or psychiatric treatment. Rather, the mother was asked to be evaluated. Appellant's mental condition was not a central, predominant, or determinative issue; nor was his mental condition the basis of the complaint or the grounds for the motion for permanent custody. Rather, the issues surrounding appellant were the alleged abuse of his child and his drinking problems. Thus, under the above analysis, appellant's due process rights were not violated. This assignment of error is overruled for all of the foregoing reasons.
 {¶ 63} Under this assignment appellant also makes collateral statements which are not related to the denial of an expert. As such, we need not address these mere notations as per App.R. 12(A)(1)(b),(2) and App.R. 16(7). Appellant notes in one sentence that the court denied his motion for a copy of the report made by the psychologist who evaluated the mother. However, he sets forth no argument or law as required under App.R. 16(7). Additionally, he did not file an objection from the magistrate's denial of his motion under Juv.R. 40(C)(3)(b). Appellant then claims that he filed a request for discovery and the agency failed to disclose that the psychologist who wrote the report would be testifying. Yet, in reviewing the file, the docket, and the argument raised by mother's counsel at the hearing, there is no indication that appellant filed a request for discovery; it is only clear that mother filed a request for discovery and objected at the hearing regarding the testimony of this psychologist. Further, the magistrate found the parties were sufficiently on notice that this psychologist would be a witness, and appellant does not contest this finding. As such, even if we reviewed these collateral issues, they would be overruled.
 {¶ 64} For the foregoing reasons, the decision of the trial court is hereby affirmed.
Judgment affirmed.
Waite, P.J., and Donofrio, J., concur.
[1] In determining best interests, the court is to consider the relevant factors, including but not limited to the following, listed in R.C. 2151.414(D): (1) the interaction and interrelationship of the child with his parents, siblings, and other significant persons; (2) the child's wishes as expressed through a guardian ad litem; (3) the custodial history; (4) the need for a legally secure placement; (5) whether any factors in (E)(7) through (11) apply.