This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant Juanita Lumpkin has appealed from a decision of the Summit County Court of Common Pleas, Domestic Relations Division that denied her motion for contempt and granted Plaintiff-Appellee John H. Lumpkin's motion for modification of spousal support. This Court affirms.
 I. {¶ 2} Appellee John H. Lumpkin ("Husband") and Appellant Juanita Lumpkin ("Wife") were married in Youngstown, Mahoning County, Ohio, on July 16, 1960. Three children were born as issue of the marriage, all of whom are adults and now emancipated. Wife filed for divorce on March 25, 1999; Wife also filed a motion for temporary orders, whereby she requested, inter alia, temporary spousal support. On April 14, 1999, temporary spousal support was granted to Wife in the amount of $775 per month, plus 2 percent processing fee, to be paid through the Child Support Enforcement Agency ("CSEA"), effective April 13, 1999. The order granting Wife temporary spousal support was later modified to the extent that all spousal support would either be withheld or deducted from Husband's pension with the Ralston Purina Company or from the wages or other assets of Husband.
 {¶ 3} The divorce was granted on August 6, 1999. Pursuant to the terms of the divorce decree, Husband was ordered to pay Wife spousal support in the amount of $775 per month, plus 2 percent processing fee, to be paid through the CSEA. The trial court retained jurisdiction over the issue of spousal support and further held that "[a]ny arrearages due [Wife] under the temporary orders are not merged but remain due and owing to [Wife] from [Husband]."
 {¶ 4} On June 6, 2001, Wife filed a motion for contempt and attorney fees and costs. In the motion, Wife contended that Husband failed to pay spousal support as ordered by the court on August 6, 1999. Wife requested that Husband "be held in contempt and be appropriately sanctioned for said contempt and be ordered to pay the court costs and attorney fees incurred as a result of said contempt." Before the matter could be heard before a magistrate, Husband filed a motion to modify spousal support on June 28, 2001. Husband requested that spousal support should be modified on the ground "that there has been a substantial change in circumstances due to factors beyond his control."
 {¶ 5} The magistrate ruled on Wife's motion for contempt and Husband's motion to modify spousal support on December 27, 2001. The magistrate determined that Husband had remarried and his yearly income was approximately $22,644.92. The magistrate further determined that, at the time Husband and Wife were divorced, Husband was working at Apples' grocery store as a night clerk. Since June 2000, however, Husband was no longer able to work at Apples' grocery store due to his health. The magistrate found:
 "[Husband] is in poor health. His doctor appointments average three a week. He is currently treating with a heart specialist, cancer specialist, foot doctor, throat doctor, orthopedic doctor, and knee surgeon. He suffers from several ailments which include high blood pressure, diabetes, arthritis, cancer and heart problems."
 {¶ 6} In addition, the magistrate determined that Husband had suffered two heart attacks since the divorce. As a result of his health problems, and because Husband was no longer able to work at Apples' grocery, the magistrate found that Husband had been able to pay only $473.53 per month in spousal support, which was withheld from Husband's pension. Husband was accruing arrearage each month in the amount of $302.
 {¶ 7} The magistrate also found that Wife had problems which affected her ability to work; in the summer of 2001 she had to reduce her hours at J.C. Penny Company to thirty hours a week as a result of a prior back injury. The magistrate determined that Wife's annual salary was $9,360 per year; her total yearly income, including $775 in court ordered spousal support, was $18,660.
 {¶ 8} In determining Husband's request for the modification of spousal support, the magistrate found that Husband had a net income of $1,854 per month and Wife had a net income of $1,354 per month. Based on the parties' monthly net income, and Wife's reduction in hours at work, the magistrate denied Husband's motion for modification of spousal support and found Husband was in contempt for failure to pay spousal support. The magistrate granted Wife judgment in the amount of $2,245.63 as of September 4, 2001 for unpaid spousal support. Husband filed objections to the magistrate's decision.
 {¶ 9} On September 24, 2002, the trial court ruled on Husband's objections to the magistrate's decision. The trial court sustained Husband's objections as to the modification of spousal support and contempt. The trial court found that Husband was not guilty of contempt for failure to pay spousal support, thereby denying Wife's motion for contempt. The trial court granted Husband's motion and modified spousal support. Husband was ordered to pay $200 per month in spousal support, plus 2 percent processing fee, through the CSEA. The modification was effective June 28, 2001. The trial court retained jurisdiction to modify or terminate spousal support.
 {¶ 10} Wife has timely appealed the trial court's decision, asserting one assignment of error.
 II. Assignment of Error "THE COURT ABUSED ITS DISCRETION WHEN IT DRASTICALLY REDUCED [WIFE'S] SPOUSAL SUPPORT WHICH WAS AGAINST THE LAW, THE WISHES OF THE PARTIES AND AGAINST THE WEIGHT OF THE EVIDENCE."
 {¶ 11} In Wife's sole assignment of error, she has argued that the trial court abused its discretion when it granted Husband's motion to modify spousal support. Specifically, Wife has contended that Husband failed to satisfy his burden of proving that a substantial change in circumstances had occurred. Wife has further contended that even assuming there was a change in circumstances warranting a modification of spousal support, the trial court erred by arbitrarily choosing a value that is less than what Husband testified he could pay Wife.
 {¶ 12} Whether to enter an order modifying the amount of spousal support remains within the discretion of the trial court. Maher v. Maher (Nov. 17, 1999), 9th Dist. No. 19470, at 2, appeal not allowed (2000),88 Ohio St.3d 1447, citing Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,218. Thus, an appellate court will not reverse a trial court's decision regarding modification of spousal support absent an abuse of discretion. Blakemore, 5 Ohio St.3d at 219. An abuse of discretion connotes more than a mere error in law or in judgment; it signifies an attitude on part of the trial court that is unreasonable, arbitrary, or unconscionable.Id.
 {¶ 13} In order to modify spousal support, a trial court must specifically retain jurisdiction to do so. R.C. 3105.18(E). As the trial court specifically retained jurisdiction to modify or terminate spousal support, it had continuing jurisdiction to modify Husband's spousal support. Such jurisdiction is governed by the provisions of R.C.3105.18(E) and (F), which require the court to find a change in circumstances of either party before modifying spousal support. A change in circumstances "includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses." R.C. 3105.18(F). The change must be substantial and one that was not contemplated at the time of the previous order. Joseph v. Joseph (1997), 122 Ohio App.3d 734, 736.
 {¶ 14} The burden of proving a change in circumstances is on the party seeking the modification. Noll v. Noll, 9th Dist. Nos. 01CA007932, 01CA007976, 2002-Ohio-4154, at 23, appeal not allowed, 98 Ohio St.3d 1409,2003-Ohio-60.
 "Only where the person seeking modification shows that there has been a substantial change in financial circumstances not anticipated at the time of the original decree, does the court have jurisdiction to consider the modification. Once the movant demonstrates the substantial change of circumstances, the moving party still has the burden of showing that the current award is no longer 'appropriate and reasonable.'" (Citations omitted.) Noll, 2002-Ohio-4154 at 23.
 {¶ 15} In determining whether the modification of spousal support award is "appropriate and reasonable," the trial court should consider the following factors:
"(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed[;]
"(b) The relative earning abilities of the parties;
"(c) The ages and the physical, mental, and emotional conditions of the parties;
"(d) The retirement benefits of the parties;
"(e) The duration of the marriage;
"(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
"(g) The standard of living of the parties established during the marriage;
"(h) The relative extent of education of the parties;
"(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
"(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
"(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
"(l) The tax consequences, for each party, of an award of spousal support;
"(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
"(n) Any other factor that the court expressly finds to be relevant and equitable." R.C. 3105.18 (C)(1).
 {¶ 16} "When considering a motion to modify a spousal support order, the trial court need not [examine] all factors listed in R.C. 3105.15(C)(1). The court need only consider the factors which have actually changed since the last order." Mizenko v. Mizenko (June 7, 2001), 8th Dist. No. 78409, 2001 Ohio App. LEXIS 2514, at *5, citing Tremaine v. Tremaine (1996), 111 Ohio App.3d 703, 706, appeal not allowed (1996), 77 Ohio St.3d 1480; See, also, Johnson v. Johnson (Sept. 30, 1997), 11th Dist. No. 96-L-171, 1997 Ohio App. LEXIS 4416, at *4..
 {¶ 17} In the case sub judice, Wife has contended that Husband failed to prove that there was a substantial change in circumstances. Specifically, she has contended that he has failed to show that was unable to work because of 1) certain medical problems, i.e. cancer, diabetes, high blood pressure, and arthritis; and 2) injuries arising from an automobile accident. Wife's arguments basically concern Husband's inability to provide the trial court with documentation to corroborate his alleged medical conditions. Husband, she has argued, failed to "mention or identify any documents or prescriptions which would corroborate his alleged medical conditions." Wife has further argued that "[f]or all of [Husband's] injuries and incidents involving automobiles, there are no personal injury claims or lawsuits or the likes of one."
 {¶ 18} After reviewing the record, we find that the trial court did not abuse its discretion in finding that Husband satisfied his threshold burden of proving a substantial change in the circumstances that was not contemplated at the time the existing award was made. See Joseph, 122 Ohio App.3d at 736. At the hearing on the motion, Husband presented testimony concerning his medical problems, but failed to submit evidence to corroborate his alleged medical conditions. However, during direct examination, Husband provided the names of his treating physicians: Dr. Marchetti, his family physician; Dr. Hooper, a heart specialist; Dr. Conley, an oncologist who treated Husband for cancer; Mr. Nixon, a podiatrist; Dr. Fulton, a "throat" doctor; Dr. Stewart, an orthopedic doctor; Dr. Blasio, who performed surgery on Husband's "busted" teeth; and Dr. Pinkowski, who was going to perform surgery on Husband's knee.
 {¶ 19} Husband further testified that he suffered two heart attacks after the parties were divorced in August 1999. Husband testified that he was taking approximately thirteen different medications for his injuries and ailments; Husband conceded that he could not name each and every drug that he was taking. As a result of his ailments, Husband testified that he had to resign from his job at Apples' grocery store because of "[d]octor's orders." Husband testified that he could only pay Wife spousal support from his pension because he no longer worked at Apples' grocery store.
 {¶ 20} Although Husband did not introduce documentation, i.e., medical bills or receipts, a physician's note, etc., to corroborate his alleged medical problems the trial court could rely on the testimony of a testifying witness. The weight to be given the evidence and the credibility of witnesses are primarily for the trier of fact to determine. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 23. Thus, it was within the trial court's discretion to believe or disbelieve Husband's testimony regarding his medical problems.
 {¶ 21} We also find that the trial court did not abuse its discretion in finding that Husband satisfied his burden of proving that the award was no longer "appropriate and reasonable." Even though the trial court did not specifically cite to the factors listed in R.C.3105.18(C)(1), we find that the trial court relied on those factors in deciding the appropriateness and reasonableness of modifying Wife's spousal support. The trial court looked at the income of the parties from all sources. R.C. 3105.18(C)(1)(a). The trial court looked at the age and the physical, mental, and emotional conditions of the parties. R.C.3105.18(C)(1)(c). The court also discussed other factors that it found relevant in deciding upon whether the award was no longer "appropriate and reasonable," i.e., Husband's medical bills. R.C. 3105.18(C)(1)(n). In concluding that the prior award of $775 per month was no longer "appropriate and reasonable," the trial court stated: "Without [Husband's] employment income [from Apple's grocery store], he cannot afford to pay spousal support as set and provide for his own necessities."
 {¶ 22} Based on the evidence that 1) there was a substantial change in the circumstances of either party that was not contemplated at the time the existing award was made and 2) that the award was no longer "appropriate and reasonable," we find that the trial court did not abuse its discretion in granting Husband's motion to modify spousal support. We further find that it was not an abuse of discretion to conclude that Wife was entitled to $200 per month, which is $273.53 less than the amount Husband said he was willing to pay Wife during the hearing on the motions and in his objections to the magistrate's decision. While the amount of spousal support the trial court awarded to Wife is less than the amount Husband testified he was willing to pay Wife, it was within the trial court's discretion to choose an amount it found equitable based on the information contained in the record. See Joseph,122 Ohio App.3d at 736.
 {¶ 23} In addition, we reject Wife's arguments with respect to the trial court's use of a FinPlan analysis. Wife has argued that "[a] Fin Plan is not law" and that the magistrate did not have the benefit of the FinPlan, and "[t]herefore, figures were relied on that may not have been in evidence." Wife has further argued that "[t]he trial court should have resubmitted *** the case to the magistrate with instructions, permitting the parties to submit expense affidavits as well as credible bills, receipts and rent or mortgage payments so as to determine from the facts whether the parties, specifically [Husband] could afford to provide for his necessities under the spousal support orders set at that time."
 {¶ 24} We first note that some trial courts in Summit County routinely rely on FinPlan analyses to determine the financial responsibilities of parties involved in domestic actions. See Carter v.Carter, 9th Dist. No. 21156, 2003-Ohio-240, 6, fn.1. Moreover, it appears that the figures used by the trial court in the FinPlan analysis were either based upon the testimony given by Wife and Husband at the hearing on the motions or on the evidence in the record. In any event, we find that it is irrelevant whether the trial court used a FinPlan analysis in determining whether spousal support should be modified. A trial court is not required to defer to the decision of the magistrate. Rather, as determined by the majority in Lowery v. Keystone Board of Education (May 9, 2001), 9th Dist. No. 99CA007407, a trial court reviewing a magistrate's decision may conduct a de novo review of factual as well as legal issues, if it so chooses. "This is because the trial court is the ultimate authority at the trial level and can substitute its judgment for that of the magistrate." In re Hess, 7th Dist. No. 02 JE 37, 2003-Ohio-1429, at 23, citing Knauer v. Keener (2001),143 Ohio App.3d 789, 793-794. Therefore, even if the trial court employed a different analysis or calculation in concluding that spousal support should be modified, it had the discretionary authority to do so.
 {¶ 25} Accordingly, Wife's assignment of error lacks merit.
 III. {¶ 26} Wife's sole assignment of error is overruled. The judgment of the trial court is affirmed.
BAIRD, P. J. CONCURS.